HARRY BRICKER, APPELLANT, v. GILLE MANUFACTURING CO., EMPLOYER, EMPLOYERS REINSURANCE CORPORATION, INSURER, RESPONDENTS.*—35 S. W. (2d) 622.

Kansas City Court of Appeals. February 16, 1931.

990

*Kaelin, Smith & Thomas* for appellant.

*C. V. Garnett* and *J. B. Robertson* for respondent.

BLAND, J.—This is an action under the Workmen's Compensation Act. Claimant was injured on August 10, 1927, by an accident arising out of and in the course of his employment with the defendant, Gille Manufacturing Company, in Kansas City. A claim for compensation was filed with the commission on October 4, 1928. The insurer, which represented itself and the employer in all matters before the commission, filed an answer to the claim, setting forth as the sole defense that the statute of limitations had run against the claim. The claim was heard by the commission and a final award was made in favor of claimant in the sum of $17.50 per week for 70.2 weeks for permanent partial disability, or in a total sum of $1228.50. The employer and the insurer appealed the cause to the circuit court where the order of the commission was reversed and set aside on the ground that the claim had been barred by the six months statute of limitations. [See section 39, Laws of 1927, page 511.] Claimant has appealed the cause to this court.

The facts show that claimant was injured in opening a box of tin plates when a splinter from the box struck him in his left eye. The commission found that he lost 65% of the vision of the eye. Claimant, immediately upon the receipt of his injury, gave notice of it to his foreman and on that day saw Dr. Hedrick in reference to his eye, which claimant testified "was in very bad shape." He was under the care of this doctor until October 27, 1927. He returned to work on August 16, 1927, and has remained there ever since. After he was released by Dr. Hedrick he saw no other doctor until on March 3, 1928, when he consulted Dr. McKee, who examined him and found the loss of the sight of his eye to be from "sixty to seventy per cent." The doctor made another examination on November 24, 1928. At that time the doctor's "findings were the same as the one in March." The doctor did not give

claimant any treatment at any time as claimant merely called at the doctor's office for his opinion as to the condition of his eye.

The notice and report of the accident by the employer is dated August 18, 1927, but it was not received by the commission until November 29, 1927. On the day of the receipt of the notice and report the commission addresed a letter to the employer, the insurer and the claimant, notifying them of the receipt of the report of the accident and enclosing three forms with the request that the parties confer with each other and adjust the compensation, or reach an agreement in regard thereto, within fifteen days, and fill in, sign and send to the commission, in proper form, certain forms and receipts mentioned in the letter to be executed. The character of the forms and receipts to be executed, according to the letter, depended upon whether the disability was temporary only and had terminated or that the disability was temporary only and had not terminated or that the disability was permanent and that the nature and extent thereof was not yet determined. Another form was to be executed and sent in as soon as the extent of the permanent disability was determined. When all of the compensation had been paid final receipts and a certain form, referred to as form 2, should be signed by the employee and sent by the employer to the commission. In case there was a dispute as to the wages a certain receipt and agreement should be executed. The letter winds up by stating: "As soon as it is apparent that no agreement can be reached, this Commission should be notified at once on Form 6. The employee should notify this Commission at once if necessary medical aid is not being furnished or if his compensation is not paid on each pay day. In writing, always refer to the above accident number."

On December 13, 1927, the insurer wrote the commission acknowledging receipt of its letter of November 29 and stating: "Please be advised that release will be mailed to you on this case in the near future. It has not yet been executed due to the fact that we are waiting further report from the doctor."

On January 16, 1928, the commission addressed letters to the employer, the insurer and the claimant stating that it was holding open the file in the case "pending receipt of further report;" that, "If disability has ended and compensation has been paid, Final Receipt should be executed and forwarded. If disability has not ended, we kindly ask that we be advised of the present status of the case."

On February 1, 1928, the commission addressed letters to the said three parties, complaining that it had failed to receive a reply to its letter of January 16, and asking that a reply be made before February 17. On February 11, 1928, the insurer wrote the commission, replying to its letter of February 1 and stating: "So

far we have been unable to determine the extent of this injury, hence the delay in mailing final receipt. However, we believe we will be able to bring this matter to a close within the next few weeks at which time you will be promptly advised.''

On April 3, 1928, the commission wrote the three interested parties, stating:

''Please be advised we are holding our file open pending receipt of First Receipt, or in case disability has terminated, a Final Receipt should be executed and forwarded to this office.''

On April 20, 1928, the commission wrote the three interested parties complaining that no reply had been received in its letter of April 3, and asking an immediate reply. On April 27, 1928, the insurer wrote the commission acknowledging receipt of its letter of the 20th and stating:

''This employee is confined to his home with the mumps, and consequently we are unable to interview him at this time. We will keep you advised as to developments.''

On June 2, 1928, the commission addressed a letter to the three parties interested stating:

''Please advise us as to the present status of the subject case.

''We are awaiting a final receipt on (Form # 2) for completion of our files.''

On June 9, 1928, the insurer wrote the commission as follows:

''Replying to your letter of June 2, we feel that inasmuch as this employee has made no formal claim for compensation, his claim, if any, would be outlawed by Statute.''

On September 24, 1928, claimant wrote the commission a letter, which is the only letter shown in the abstract as ever having been written by him, complaining that he had not been able to obtain a settlement for the injury to his eye; that it had been over a year since the accident happened and asking advice as to ''what to do or how to get a claim.''

On September 26, 1928, the commission addressed letters to the three interested parties, acknowledging receipt of claimant's letter of the 24th, and stating that a report of the accident was received on November 29, 1927; that the same was acknowledged in the regular manner, and that:

''From the time of the receipt of the Report of the Accident up until June 2, 1928, *we endeavored to get in touch with the employee, but were not able to hear from him,* and as the insurer advised us on June 9, 1928, that no claim had been made up to that time, we, accordingly, closed our file.'' (Italics ours.)

The letter then states that as the claim had not been filed within six months from the date of the injury, ''it would appear that any claim at this time would be barred by the statutes of limitations.''

As before stated, on October 4, 1928, claimant filed a claim with the commission. Although the sole defense made by the answer filed to the claim was the statute of limitations had barred it, the commission, in its findings of fact, made no finding whatever upon the issue of limitation and made only a general conclusion of law that the claimant was entitled to recover in the amount mentioned.

Section 41 of the act provides that the commission shall make a statement of findings of fact and rulings of law. There was no substantial compliance with the statute on the part of the commission in this respect. There was no findings of fact to support the general conclusion of law, in view of the issue raised before the commission. It is well settled that, in determining the sufficiency of evidence to sustain the findings of fact made by the commission, this court will look only to the evidence most favorable to support such findings; that such findings stand on the same footing as the verdict of the jury or the findings by the trial court sitting as a jury, and therefore, the commission's findings are conclusive, provided, there is competent and substantial evidence to sustain them. [Cotter v. Valentine Coal Co., 14 S. W. (2d) 660; Woods v. American Coal & Ice Co., 25 S. W. (2d) 144; Brewer v. Ash Grove Lime & Portland Cement Co., 25 S. W. (2d) 1086.]

However, as before stated, there was no findings of fact upon the issue presented to the commission. It is well settled that the conclusions of law announced by the commission must be supported by the findings of fact. [Inland Steel Co. v. Lambert, 118 N. E. 162, 163.] However, it has been held that where there had been no findings of fact, if the facts are undisputed and susceptible to but one construction, the court will treat the undisputed testimony as a findings of fact. [Prouse v. Industrial Com. of Colo., 69 Colo. 382.] See Murphy v. Burlington Overall Company et al. # 17082, decided by this court.

As the undisputed testimony shows that the accident happened on August 10, 1927, and that the insured received a compensable injury upon that date (see Wheeler v. Mo. Pac. R. Co., 33 S. W. (2d) 179), and the claim was not filed until October 4, 1928, the claim is barred by the Statute of Limitations. [See Laws of 1927, section 39, page 511.]

However, claimant urges that the insurer was guilty of "improper acts" within the meaning of section 1334, Revised Statutes 1919, which, under the provisions of section 39 of the Workmen's Compensation Act, tolls the running of the statute. In this connection claimant insists that the claim was filed within six months from April 27, 1928, on which date the claimant states the statute began to run by reason of its having been tolled to that date by "improper acts" and fraud within the meaning of the term fraud as used in section 55 of the compensation act. [See Laws of 1927,

page 516.]. It is therefore contended that the claim was filed within the six months period of limitation. One of the "improper acts" relied upon by the claimant is that the notice and report of the claim filed by the insurer on November 29, 1927, gave the address of the claimant as 1408 Harrison street, Kansas City, Missouri, whereas, his real address was 1408 Harrison street, Independence, Missouri. Other improper acts urged by the claimant are the fact that the notice of the report of the claim was not filed until November 29, 1927, whereas, it was dated August 18, 1927, and when the employer had notice of the accident on the date of its occurrence or on August 10, 1927. Also the conduct of the insurer in not promptly answering, as claimant contends, the letters of the commission, putting it off and promising to write it within a certain time and failing to live up to its promise. To use claimant's own words he states:

"Why was the report of the accident dated August 18, 1927, showing knowledge of the accident within ten days after the accident, not filed with the Commission until November 29, 1927? Why was the wrong address of the employee given in this report? Why was it necessary for the Compensation Commission to write repeatedly to the employer and insurer about the final receipt, and why did the insurer wait so long before replying, and when it did reply, why did it invariably promise to mail the release or final receipt in the near future? Why was it impossible to determine the extent of the injury as late as April 27, 1928? Why did the insurer write the commission on April 27, 1928, that the insurer would keep the Commission advised as to *developments?* Why was it necessary to wait until June 9, 1928 for the insurer to notify the Commission it had reached the conclusion that the employee's claim would be outlawed by statute? Each and every communication above referred to, and all of which are in the record, constitute improper acts and conduct. . . .

"The failure of the employer and the insurer to comply with the express terms of section 34 regarding the furnishing of the Commission with supplemental reports and filling out and returning blanks submitted with its letter to the employer and insurer dated November 29, 1927, also constitute improper acts. Even though it should be argued that the employee did not do so, either, he was laboring under the handicap of having his mail sent to the wrong address, as well as lack of knowledge of the provisions of the law, and then his attorney and counsellor provided by the Act, the Commission itself, was being misled, to say the least. . . .

"The Statute of Limitations was further tolled at least until April 27, 1928, the date of the insurer's last letter to the Commission containing promises to keep it advised of *developments,* by reason of the improper acts or failure of the employer and insurer to

comply with the orders and requests of the Commission relative to forwarding reports, releases and receipts, contained in its letters of November 29, 1927, January 16, February 1, April 3, April 20 and June 2, 1928, only three of which were answered, and then promises therein made were never kept. We submit that the insurer violated the provisions of section 55 of the Act who by its fraud, deceit and misrepresentation and with intent to defraud, caused or procured or conspired with, aided or abetted another in causing or procuring this employee who was entitled to benefits under the Act *to fail to make claim therefor,* and that any and all of the unkept promises and misrepresentations made by the insurer amounted to such *improper acts* as to toll the Statute of Limitations, as provided in section 1334, Revised Statutes 1919, and in accordance with Schrabauer case.''

Claimant further states:

''The acts and conduct on the part of the insurer, as evidenced by the above letters set forth, caused and procured the employee, who beyond doubt was entitled to benefits under the Compensation Act, to fail to make his claim therefor. Said acts and conduct were in violation of the provisions of section 55, and no other conclusion can be drawn than that said letters were written for the purpose of misleading the Compensation Commission and misrepresenting facts, because the insurer never did send any final receipt, although it promised to do so.''

Section 34 of the compensation act provides that the employer shall notify the commission of the accident within ten days after receiving knowledge of it; that a full and complete report shall be made by the employer within one month and, that ''every such employer shall also furnish the commission with such supplemental reports in regard to the accident as the commission shall require.'' It further provides in this section that the employer, the insurer, the employee. etc., and every other person receiving from the commission any blank reports with directions to fill out the same, shall cause the same to be promptly returned to the commission; that good and sufficient reason shall be given for failure to answer any question.

Section 35 provides for voluntary settlements between the parties and that such settlement shall not be valid until approved by the commission.

Section 36 provides that upon receipt of notice of any accident the commission shall forward to the employer, the employee or his dependents a form of agreement to pay and accept compensation, which agreement shall be promptly executed by both parties and returned to the commission; that, in case the employer disputes the claim and for that reason refuses to execute the agreement to pay compensation, the commission shall assist the persons who

claims to be entitled to compensation in filing his claim and in securing an early adjustment thereof.

Section 40 provides that if the employer and the employee or his dependents fail to reach an agreement in regard to compensation either' party may make application to the commission for a hearing in regard to the matters at issue between them.

We are at a loss to understand how it can be said that there were any improper acts, on the part of the insurer, within the meaning of section 1334, Revised Statutes 1919. The Supreme Court in the case of Davis v. Carp, 258 Mo. 686, 698, stated:

"The 'improper act' referred to in the statute must be one in the nature of a fraud that would prevent the commencement of the action, in order to bring the act within the statute."

There is no evidence of fraud within the meaning of section 55 of the compensation act. Under the decision of the St. Louis Court of Appeals in the case of Schrabauer v. Schneider Engraving Product, Inc., 25 S. W. (2d) 529, the Statute of Limitations did not start to run until the filing of the notice of the accident, which was done in this case on November 29. 1927. However, the claim was not filed within six months from this time and even under the Schrabauer case was not in time. so the conflict that exists between the decision of this court in Wheeler v. Mo. Pac. Ry. Co., supra, and that of the St. Louis Court of Appeals in the Schrabauer case is immaterial. so far as the proper decision in the case at bar is concerned. The excuse given by the insurer for not giving notice and making the report provided for in section 34 of the act, sooner, is that it regarded the accident as a trivial one and "that under such conditions the practice of insurers is to send in report and final receipt at the same time. thus disposing of the file at one mailing, which accounts for the delay in mailing in the first report. The report, however, was mailed to and received by the commission on November 29, 1927. after which the commission sent out its usual form letter to all parties directing the method of disposing of the claim." However, the insurer admits that there is nothing in the record concerning its practice in such matters. Of course, the law is well settled that we may not consider anything not in the record.

While, the employer, in the report of the accident gave the wrong address of the claimant, there is no evidence or a suggestion in the evidence that this was not an innocent mistake on the part of the employer. In fact, the record discloses that there was no contention made at the trial before the commission, although claimant testified thereat, that the claimant did not receive all of the communications addressed to him by the commission. The only evidence bearing upon this point at all is the letter written by the claimant to the commission on September 24, 1928. which gives the

file number of the case. Claimant could not well have known of that number had he not received the board's communications. So, under the circumstances, for the purpose of disposition of this case, we may assume that all of the communications of the board addressed to claimant were received by him.

As far as the letters written by the insurer to the commission were concerned, there is no evidence or inference from the evidence that the statements made in these letters were not true. These letters merely disclose that an effort was being made to adjust the matter and no adjustment had been made at the time the claim became barred by the statute. There is no evidence that the delay in answering the letters of the commission was from any ulterior motive. There is no evidence of any unkept promise. The extent of the disability was not known until March 3, 1928. The evidence does not even suggest any unfair dealing on the part of the defendants but shows merely an effort to compromise the case. The law encourages the adjustment of disputes by the parties and the commission desired a compromise in this instance.

There is no evidence that either claimant or the commission was deceived in any respect. The commission knew that a compensable injury had been received long before the six months period was up. It had ample time to advise claimant of his rights and although it repeatedly wrote him he wholly ignored its communications. In fact the defendants were the only parties to give any attention to these communications and, though claimant complains of defendants' shortcomings in this respect, his own conduct does not measure up to theirs in any respect. He can only blame himself. There was no improper acts or fraud shown and the statute of limitations was not tolled. [See Davis v. Carp, supra.]

We therefore, conclude, as did the trial court, that there was not sufficient competent evidence in the record to warrant the making of the award. [Sec. 44, p. 512, Laws of 1927.] There is nothing in the beneficent provisions of section 76 of the act that would warrant us ruling otherwise.

Claimant states in his brief that if there was not sufficient evidence in the record, on the matter as to whether the claim had been barred, to warrant the award of the commission, then we should remand the cause to the commission for rehearing and further proceedings. We think that such a course would avail nothing, as it appears that there are no material facts in reference to the matter not elicited before the commission at the hearing resulting in the award.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.