# DANIEL J. W. GRIFFIN *v.* RUSTLESS IRON AND STEEL CO.

[No. 49, October Term, 1946.]

*Decided February 5, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William Taft Feldman,* with whom was *I. Duke Avnet* on the brief, for the appellant.

*Rignal W. Baldwin* and *David R. Owen,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Daniel J. W. Griffin, appellant, was employed in the mill of Rustless Iron and Steel Company, appellee, in

August, 1939, and was the victim of an explosion there, at that time, by which he was sprayed with a hot lead solution. Some of the lead went into his left eye. He received first aid treatment, including the bandaging of his eye, and then resumed work. He reported again for treatment three days later, and was then sent to the office of Dr. Buchness, the employer's doctor. The bandage was taken off his eye, the doctor looked at it, put some salve in it and told him to have it dressed again at the plant dispensary. He had burns on his body, face, neck and arms as well as his eye, and he received medical treatment once or twice a week for all of his injuries until they seemed to be cured. The appellant, however, started to get headaches and his eye commenced to pain. He went to the doctor and the doctor looked at it with a light and told him that if he had any trouble with it to let him know. That kept up for a year or eighteen months after the accident. Finally, he got tired and told Dr. Buchness that he had to get somebody to look after his eye. The doctor told him to go to a first-class hospital. He went to the Presbyterian Eye, Ear and Throat Hospital, but they did not treat him. Then the doctor sent him to a specialist, Dr. Anderson. The latter told him he had a film over his eye, that it was not ripe, to come back in nine or twelve months.

In twelve months' time the appellant went back to Dr. Anderson who again said it was not ripe and told him to come back in another nine or twelve months. The appellant tired of this, and at his request, Dr. Buchness sent him to another specialist, Dr. Tarun. He looked at the eye, put drops in, and on the following day made a thorough examination of both eyes. He also said there was a film over the eye. Dr. Tarun said (according to appellant) that after it got hard, he could get over to the corner of it and pick it off.

The appellant lost no time from work on account of his eye except for these visits to the doctor. He visited Dr. Anderson on July 30, 1941, and his visit to Dr. Tarun was in August, 1941. On cross-examination, the

appellant was asked, with reference to this time in 1941, "of course at that time you had no question in your mind that your eye had a defect, did you?" And he answered, "No, sir." He further said that at that time both doctors told him there was a film, although neither called it a cataract. Appellant worked regularly and continuously from 1939 until 1946, when he retired at the age of 65. When he was hurt, he was receiving 75 cents an hour and when he retired he was receiving $1.21 an hour. He was a foreman, and his pay was that regularly paid for his job.

In April, 1945, the appellant reported for the last time to the company's dispensary and was examined there by Dr. Wampler. The latter turned on a flash light, looked into appellant's eye, and told him to come back in six months' time. The appellant told him he was getting tired of this "come back business" and was going to take proceedings. He then went of his own accord to Dr. Hurwitz, an eye specialist, who examined him on May 7, 1945. Dr. Hurwitz found that in the left eye there was a dense mature cataract, and that appellant had no vision in that eye except that he could see light. The physician concluded from his examination that appellant had suffered from iritis, at some previous time, because of the atrophy of the tissue, and that his cataract was a secondary cataract. He said that there was a total loss of vision in the left eye, that a removal of the cataract might be attempted and the appellant might get a good result, but even in that event he would have to have a special heavy lens in order to see. The doctor said that it was possible there was causal connection between the accident of August, 1939, and the present condition. When atrophy of the iris exists, as was found in this case, the normal tissue is displaced by scar tissue. Senile cataracts are prevalent at appellant's age, but not secondary cataracts which he had. The appellant had testified that he never had any trouble with his eye until the accident. Both parties have treated the eye trouble as if it were traumatic, so we are not concerned,

on this appeal, with any evidence questions in this respect. However, it has been held in compensation cases that lay testimony as to accidents and resulting effects is at times sufficient to submit a case to a jury. *Neeld Construction Co. v. Mason,* 157 Md. 571, 146 A. 748; *Bethlehem Steel Co. v. Ziegenfuss,* 187 Md. 283, 49 A. 2d 793; *Cumberland & Allegany Gas Co. v. Caler,* 157 Md. 596, 146 A. 750.

A claim was filed with the State Industrial Accident Commission on May 10, 1945, and at a hearing on September 27, 1945, the Commission disallowed appellant's claim on the ground that the condition complained of was not the result of, or caused by, the injury he had suffered in 1939. An appeal was then taken to the Baltimore City Court. There three issues were submitted to the jury. The first was whether the claimant's condition was caused by the injury. The second was whether the claimant filed his claim within one year after the beginning of his disability. The third was that if the claimant had not filed his claim within one year after the beginning of his disability, then was his failure induced by or occasioned by fraud or by facts and circumstances amounting to an estoppel.

After the testimony was completed, the court below directed the jury that they need not answer the first issue, that they should answer the second issue "No," and that they should answer the third issue "No." As a result of this instructed verdict, the court affirmed the decision of the Commission and gave judgment in favor of the appellee for costs. From these actions the appeal comes here.

Two questions are presented for our consideration, based respectively on the second and third issues before the court. The first is whether appellant's claim is barred as provided by Code, Article 101, Section 38, as renumbered by Laws 1945, Ch. 528, Sec. 2, because he did not file his claim within one year after the beginning of his disability. The second is based on the assumption that his claim was not so filed, and we are

asked to determine whether the failure to file such a claim was induced by facts and circumstances amounting to an estoppel.

We have not in the statement of facts touched upon the testimony relied on for the establishment of the estoppel and it is therefore pertinent to mention this testimony at this time. The appellant said that after he went to Dr. Anderson the first time (which seems from his testimony to have been in 1940) he came back and told Mr. Grundman, the safety engineer of the plant. The appellant, however, places this conversation about 1941. He said Mr. Grundman said, "All right, you just come up as the doctor tells you." He told Mr. Grundman that Dr. Anderson had told him there was a film over his eye and to come back in nine or twelve months, and Mr. Grundman told him that was "all right, just do that." Again, in 1944, while appellant was talking to Dr. Wampler, Mr. Grundman came along and the doctor asked Mr. Grundman if the appellant could read. Mr. Grundman replied, "Why certainly he can read. He can do more than I can do." With that, appellant told him he was going to take proceedings. Grundman said, "You can't do that; we are going to look after you."

The appellant testified that Mr. Grundman was the plant safety engineer. After accidents, he looked to see if there could be any remedies to prevent them and if he found any, he suggested them. It was not the practice of the appellant to speak with him about any accidents or injuries sustained in the plant, but he reported to Mr. Grundman in 1941, after his conversation with Dr. Anderson, because it was his order to report.

The company's physician, Dr. Buchness, continuously treated (or at least examined) appellant's eye until 1941 when he sent him to two specialists, but such treatment was purely medical and had nothing to do with the legal aspects of any claim against the company. Compare construction *Longshoremen's Act*. 33 U. S. C. A., Sec. 901 *et seq.; Marshall v Pletz*, 317 U. S. 383, 63 S. Ct. 284, 87 L. Ed. 348. The mere fact that appellant was

being treated by a physician paid by the appellee would not estop the latter from imposing the defense of limitations to a late claim. The sole basis for estoppel, therefore, are the two conversations appellant had with the plant engineer. These also both seem to relate only to the medical attention he was to get and not to any financial care. The appellant was working all the time, receiving the normal increases in pay. It is not suggested or intimated that this was in any way due to anything else than his own ability. He was not kept in his position on account of his eye injury, or in spite of it. From the testimony, the eye injury had nothing to do with his being kept in his position.

We recently had occasion to consider the question of estoppel under the Workmen's Compensation Law in the case of *West Virginia Pulp & Paper Co. v. Morton,* 185 Md. 623, 45 A. 2d 725. In that case a man was injured by chlorine gas in such a way that he could not do his normal work, and the department superintendent told him that the Commission would take care of his claim if any claim was to be filed, and he was kept doing easy work. In that case, we held that, as the superintendent had no authority to make the promise which it was testified he made, and as the claimant knew that another person, representing the employer, took care of compensation matters, the employer was not bound by any such statement and was not estopped from setting up the defense of limitations.

In the case before us it is not only not shown that Mr. Grundman had authority to make any promises relating to compensation or financial settlement, but the only statement that he made possibly susceptible of such a construction was that in 1944, when he was told by the appellant that he was going to take some proceedings. That statement was: "We are going to look after you," which, made at a conference with the doctor, in our opinion, indicated medical attention and not financial settlement. We are unable to find any of the elements of estoppel in this case, and we think the appellee is

clearly entitled to raise the defense of limitations if such defense is available. That brings us to the consideration of the first and main question in the case, whether the appellant filed his claim within one year after his disability occurred.

It is provided by Article 101, Section 38, of the Annotatted Code, as renumbered by Laws 1945, Ch. 528, Sec. 2, that "failure of an employee to file a claim for compensation within one year after the beginning of his disability shall constitute a complete bar to any claim under this Article," unless there is fraud or estoppel, the first of which is not claimed and the last we have found not to exist in this case. The appellees find much meaning in the word "beginning," contending that this indicates the commencement of *any* disability compensable under the Act. That is, disability generally, and not the particular class of disability for which compensation is asked.

There are four different classes of disability for which compensation is allowed, namely: temporary partial disability, temporary total disability, permanent partial disability, and permanent total disability. These four have been held to have four different compensable results. *Gorman v. Atlantic Gulf & Pacific Co.,* 178 Md. 71, 12 A 2d. 525; *Jackson v. Bethlehem-Fairfield Shipyard,* 185 Md. 335, 44 A. 2d 811. And the right to file a claim does not depend in this State upon whether the claimant lost any wages. It can be based upon a loss of function which may be a deterrent from or a denial of future promotion or future employment. *Jirout v. Gebelein,* 142 Md. 692, 121 A. 831; *Baltimore Pub. Co. v. Hendricks,* 156 Md. 74, 143 A. 654; *Baltimore Tube Co. v. Dove,* 164 Md. 87, 164 A. 161; *Strange v. Federal Land Bank,* 207 La. 17, 20 So. 2d 410.

The disability claimed in the present case is a permanent total disability, and it was not apparent to the appellant or to any doctor, so far as the record shows, that he would have this kind of disability until the examination made by Dr. Hurwitz on May 7, 1945. How-

ever, it has been held that the fact that a claimant does not know the extent or nature of his injury from a medical standpoint does not excuse him from filing a claim if he knows he has some sort of disability resulting from the accident. *Cleveland v. Laclede Christy Clay Products Co.*, Mo. App., 129 S. W. 2d 12; *Connolly v. Penn Seaboard Steel Corp.*, 100 Conn. 423, 123 A. 906; *Liberty Mutual Ins. Co. v. Parker*, D. C., 19 F. Supp. 686. And if the injury is latent, the time does not begin to run until the injury becomes apparent. *Kropp v. Parker*, D. C., 8 F. Supp. 290; *Di Giorgio Fruit Corp. v. Norton*, 3 Cir., 93 F. 2d 119; *Baltimore Steel Co. v. Burch*, 187 Md. 209, 49 A. 2d 542. Compare *Kobilkin v. Pillsbury*, 9 Cir., 103 F. 2d 667.

The weight of authority is that where a statute requires a claim to be filed from the date of an injury, that means *compensable injury*, and, for all practical effects, is the same as disability. See cases collected in *Baltimore Steel Co. v. Burch, supra*. Cases in states where there is such a statute are in point in a discussion of the statute here which uses the word "disability."

Indiana is one of these states. The statute there requires the application for compensation to be filed "within two [2] years after the injury." *Burns' Ann. St.*, 1933, Sec. 40-1224. On April 14, 1931, a foreign substance lodged in a claimant's eye and was removed by a company doctor. No time was lost from work and two days later the doctor found the eye to be all right. There was a gradual loss of vision, but the doctor did not see the claimant until December 1, 1933, when he found the eye had light perception only. On December 18, 1933, claimant became permanently and totally blind in that eye, and on July 30, 1935, the claim for compensation for permanent disability was filed. The claimant testified that six months after the accident he could not read the headlines in a newspaper and, about a year after, he could see a face only when it was close to him. Nevertheless, the court held that as the claim was for permanent disability, due to a total loss of sight, "A claim

therefore would not have been allowed until after appellee sustained such loss of vision, to wit, until after December 1, 1933 * * * and hence the statute barring the right to compensation after two years after the injury did not begin to run until after December 1, 1933." *Muehlhausen Spring Co. v. Szewczyk,* 104 Ind. App 161, 8 N. E. 2d 104, 106.

In Michigan, where there is a somewhat complicated limitation statute (2 Comp. Laws 1929, Sec. 8431), in a case beclouded by an issue of estoppel, the claimant claimed the loss of an eye. The statute provided a schedule award for such a loss and the court said such a claim was distinct from a claim for disability not resulting from a loss of a member and that the claimant "could not claim the schedule compensation for 'loss of an eye' so long as he had protective or peripheral vision which to him was useful industrial vision." His accident was in December, 1930. In October, 1931, he complained he was losing his sight. In 1935, he consulted a specialist to whom he was sent by the company five times. His eye became absolutely blind October 1, 1937, and the court held that the resulting disability began October 1, 1937. *Henderson v. Consumers Power Co.,* 1942, 301 Mich. 564, 4 N. W. 2d 10, 17.

In New Mexico, a workman was struck in the eye by a piece of steel on November 9, 1940. In April, 1941, his sight was becoming weaker and he went to an optometrist, was fitted for glasses, but was not advised of any defect in his eye. He had a check-up from the optometrist in April, 1942, but it was not until December, 1942, that he was advised by a physician that he had a total loss of vision in one eye. He filed his claim in January, 1943. The court said that the New Mexico limitations statute of one year (New Mex. Stat, Ann. 1941, Sec. 57-913) began to operate from the time of employer's failure to pay compensation *when the disability can be ascertained,* and the duty to pay arises. The point was stressed that the claimant himself must have knowledge or reasonable cause to know of the disability.

It was held that the claimant did not know this until he had consulted a physician and his claim was filed in time. *Anderson v. Contract Trucking Co.*, 48 N. M. 158, 146 P. 2d 873.

In Washington, the statute formerly provided that no application should be valid or claim enforceable "unless filed within one year after day upon which the injury occurred or the rights [thereto] accrued." Rem. Comp. Stat., Sec. 7686. A claimant continued at work for fourteen months after an injury without appreciation of the impairment of his sight. Four months after the discovery he filed his claim. The court held that he had one year after the development of his injury to file a claim. *Stolp v. Department of Labor & Industries,* 1926, 138 Wash. 685, 245 P. 20. In a later case, a claimant was injured, on February 15, 1926, and was treated by company doctors up to June, 1926, his injury not appearing to be serious and permanent. In January, 1927, his eye became so bad that he had to stop work and consult with specialists. In March, 1927, cloudiness upon the cornea became denser, but until February, 1928, specialists held out hope for restoring normal vision. At that time, he was informed there was no hope for his eye and he filed claim on February 7, 1928. The court held that the claim was filed in time and that a workman was not prejudiced "who may have suffered some compensable damage, but who, in the hope of preventing any permanent injury and loss, makes no claim for the minor loss, but continues to endeavor to prevent permanent, partial disability, for which hopes are held out to him by those specially skilled in that line to whom he applies for treatment." *Fee v. Department of L. & I.,* 1929, 151 Wash. 337, 275 P. 741, 742.

The Washington Legislature amended the definition of injury so that it read: " * * a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical condition as results therefrom." Section 2, c 310, p. 818, Laws of 1927. In a case after this amend-

ment became effective, a claimant's eyes were injured in 1925. He lost no working time and his injury was treated by the employer. During 1927 and 1928 he complained of a gradual loss of sight of his right eye and it was removed in 1930. He filed claim in 1931. The court held he should have presented his claim within one year after the day upon which the injury occurred, that is the day after the accident. *Ferguson v. Department of L. and I.*, 1932, 168 Wash. 677, 13 P. 2d 39. This ruling is followed by later Washington cases. *Sandahl v. Department of L. and I*, 1932, 170 Wash. 380, 16 P. 2d 623; *Henson v. Department of L. and I.*, 1942, 15 Wash. 2d 384, 130 P. 2d 885.

In Nebraska, where no claim could be filed more than six months after the occurrence of the injury (Rev. St. 1913, Sec 3674), tar got into a claimant's eye on December 18, 1914. The physician told him on December 25th that his eye was in a serious condition. About June 1, 1915, he lost the sight of his eye and filed his claim on June 19th. The court held that it could not be said that the injury resulted from the accident "before the time it was discovered that it might become permanent, which was some time after the 25th of December" and that therefore his claim was filed within the six months time. *Johansen v. Union Stock Yards Co.*, 99 Neb. 328, 156 N. W. 511, 512.

In Louisiana, Section 31 of the Employers' Liability Act, Act No. 20 of 1914, provided for filing claims within one year after the injury. A claimant was struck a blow over the eye on January 9, 1919. In the early part of April, he noticed spots in front of his eye, but was told by his physician it was probably caused by kidney trouble. At the end of the month, he quit work and went to a specialist. In the early part of May, he lost the sight of his eye and filed his claim April 22, 1920. The court held that the cause of action did not arise until he had lost his sight. *Guderian v. Sterling Sugar & Railway Co.*, 151 La. 59, 91 So. 546.

The Oklahoma statute bars claims unless filed within one year after the injury. Oklahoma Statute, 1931, Sec. 13367. A claimant got glass in her eye on May 14, 1934. She was treated by a doctor, continued on the job, and treated her eye intermittenly until October 9, 1935, when she informed her employer that her eye was not well. At that time a piece of glass was removed from her eye. The claim was filed on December 9, 1935. The court found there was a latent injury, seeming at first to be trivial, but subsequently resulting in disability. The date of disability was set as of October 9th, when the glass was removed and the claim was filed in good time. *Bartlett-Collins Co. v. Roach*, 1937, 180 Okla. 521, 71 P. 2d 489. The same rule was applied in 1945 in a later case involving an arm fractured on May 9, 1943. The claim was filed July 5, 1944. The court held that the lasting effect of the injury was not ascertainable until June 23, 1943. The applicable statute was 85 O. S. 1941, Sec. 43, requiring filing within one year after the injury. *Brown & Root v. Dunkelberger*, 196 Okla. 116, 162 P. 2d 1018.

In Wisconsin, a special statute of limitations barred claims not made within six years from the date of injury. Statutes 1929, Section 102.12. The court had before it a case where a claimant was struck in the eye on June 23, 1920, and was absent from work a month, receiving compensation for temporary total disability. He was fitted for glasses May 18, 1921, the doctor finding no cataract. On July 12, 1926, he was struck in the same eye by a piece of steel. It was removed on July 18 and a cataract was found. On December 22, 1926, he filed a claim for loss of sight of the eye. The court said: "It is generally held under workmen's compensation acts that injury results when the right to compensation arises. Injury and compensable disability are more in the nature of synonymous terms than are date of injury and date of the accident." Claimant's right to compensation was held not to occur until after June 12, 1926, when total blindness resulted. *Acme Body Works v. Koepsel*, 204

Wis. 493, 234 N. W. 756, 758. In a second appeal 204 Wis. 493, 236 N. W. 378, the court reiterated the position that the statute did not begin to run until *total disabilty* resulted. In another Wisconsin case, *Nelson v. Industrial Comm*, 217 Wis. 452, 259 N. W. 253, claimant's eye was injured on August 12, 1925. He returned to work five days later but his vision was so blurred he could not work properly. He was sent to a physician and stopped work entirely. He filed his claim on May 16, 1932, but made no application until April 11, 1933. He admitted that he could not see with his eye on August 17, 1925, and had never been able to see anything with that eye since. Court held that total disability began August 17, 1925, and that his claim was stale.

The Wisconsin statute was held in a later case to be "directed primarily to cases of industrial disease where it was factually possible for some time after the onset of the disease for the appellant to be in doubt or ignorant (1) as to what the disease was, and (2) whether it had in fact any relation to his employment." *Larson v. Industrial Commission*, 224 Wis. 294, 271 N. W. 835, 836. In a still later case involving a hernia, where the accident happened on December 12, 1932, application was not made for compensation until January 8, 1936. The court found that the applicant knew at once what was the matter with him. He worked until November 16, 1935, and the Commission held that he had no disability until that date, but the court said: "The commission apparently applied, to this purely industrial accident case, the rules which properly are applicable to occupational disease cases or to those exceptional cases in which compensation has been awarded for total blindness, which did not result from accidental injury to an eye, but from a condition caused by injury which was akin to or in the nature of a slowly developing disease, which ultimately caused blindness. The law applicable to controversies including occupational diseases, and to blindness caused by a disease of the eye following some injury, does not rule this controversy." *Creamery Pkg.*

*Mfg. Co. v. Industrial Comm.*, 226 Wis. 429, 277 N. W. 117, 119. From these cases it appears that Wisconsin has one rule for ordinary industrial cases and another rule for occupational diseases, and that slowly developing affections of the eye are treated in the same category as occupational diseases.

Arizona has a statute copied from the statute formerly in force in Washington, and involved in the Stolp and Fee cases, *supra*. A claimant was injured in the mouth in April, 1931. The injury healed, but in 1932 a cyst was removed from his lip, and early in the following year a cancer was removed. He lost no time from work, except the day following the accident, and six weeks preceding and following the operation. It was held that the injury was not compensable until the operation in 1933 and that claimant could not be expected to file for what was a slight and trivial injury in its origin. *Hartford A. & I. Co. v Industrial Comm.*, 43 Ariz. 50, 29 P. 2d 142.

In Missouri, a foreign substance lodged in claimant's eye on March 13, 1927. His vision was cloudy immediately following the accident and remained so even after treatment and removal of bandages. A doctor assured him his eye would clear up, but his vision became worse until, about January 1, 1929, he was no longer able to see light. He filed a claim for complete loss of sight on April 20, 1929. The statute barred a claim six months after the injury. The court held that the date of injury was that time after the accident when it became reasonably discoverable and apparent that a compensable injury had been sustained and that there was nothing in the act to indicate that limitations did not begin to run until such time as the most serious disability was ascertainable. The claim was held too late because the injury was ascertainable before loss of sight. *Wheeler v. Missouri Pac. R. Co.*, 328 Mo. 888, 42 S. W. 2d 579. The same ruling was made in *Helle v. Eyermann Contracting Co.*, Mo. App, 44 S. W. 234; *Bricker v. Gille Mfg. Co.*, 225 Mo. App. 989, 35 S. W. 2d 662; *Young v.*

*Management & Engineering Corp.*, Mo. App., 45 S. W. 2d 927 (all eye cases), and in *Cleveland v. Laclede Christy Clay Products Co.*, Mo. App., 129 S. W. 2d 12, which was an occupational disease case. In this last case, by reason of dust, claimant began in 1934 to be affected with chest pains, cough and loss of weight. In January, 1937, he was told he had silicosis and claimed his disability began then. The court admitted that it was a latent disability and that limitations would run only from the time it became reasonably apparent and discoverable, but ruled that prior to January, 1937, the claimant knew he was suffering from chest trouble and did not have to wait for confirmation by a doctor using the specific name "silicosis."

In Connecticut, a claim must be filed within one year from the date of injury. Gen. St. Conn 1918, Sec. 5360. A claimant was struck on the head in 1918 and filed a claim in 1923, after having been X-rayed and told he had a fractured skull. In the interim, he had suffered from headaches and dizziness. It was held it was not necessary for him to know the extent of his injury from a surgical standpoint and that as he had been incapacitated more than seven days during the first year following his accident, he should have filed then. *Connolly v. Penn Seaboard Steel Corp.*, 100 Conn. 423, 123 A. 906.

The Circuit Court of Appeals of the Fifth Circuit had occasion to consider whether an accident was barred under the Louisiana statute above referred to in the case of *Guderian v. Sterling Sugar & Ry. Co., supra.* The claimant had been injured on June 1, 1922, by the falling of a telegraph pole. He received not only a scalp wound but internal injury to his head, and said his eyesight began to fail, and this became noticeable first in 1924. He did not file his claim until more than one year after the accident, but claimed that the statute of limitations was tolled because he did not know the extent of his injuries until less than one year before bringing suit. The court held that his cause of action arose coincidental with the accident, saying: "If the theory

of plaintiff be followed to a logical conclusion, a person might suffer a trifling injury in his youth, and live to a ripe old age before bringing suit. The law does not contemplate such an absurdity. It is only when one does not know that he has suffered an actionable injury that the statute is tolled. Whether his damage be slight, or his injury apparently temporary, or that subsequent developments may entitle him to larger damages, is immaterial." *McLaughlin v. Western Union Telegraph Co.*, 5 Cir. 17 F. 2d 574, 576.

There are some jurisdictions in which the limitations statute begins to run after the "accident" as compared with "injury" or "disability" in others. In these jurisdictions the language is generally strictly enforced. See *Central Locomotive & Car Works v. Industrial Commission*, 290 Ill. 436, 125 N. E. 369; *Smith v. Solvay Process Co.*, 100 Kan. 40, 163 P. 645; *Murphy v. W. O. Cook Construction Co.*, 130 Kan. 200, 285 P. 604; *White v. United States F. & G. Co.*, 41 Ga. App. 514, 153 S. E. 574.

This opinion has been already too much extended by a discussion of authorities from other states, and the list is not nearly exhausted. The ones mentioned, and many others, are listed and classified by the Supreme Court of Oregon in a late case decided in 1944. This is *Landauer v. State Industrial Accident Commission*, 175 Ore. 418, 154 P. 2d 189. Reference is made to it for these addiitonal cases and also to the annotation to the Wyoming case of *Baldwin v. Scullion*, 50 Wyo. 508, 62 P. 2d 531, 108 A. L. R. 304, the annotation beginning on page 316.

It is difficult to find any general rule of construction running through all of these cases, based as they are upon different statutes and passing upon different sets of circumstances. We think, however, that the wording of the Maryland statute indicates that the period of limitation begins to run from the time when disability becomes, or should become, reasonably apparent. And we hold that this does not mean the particular class of

disability for which compensation is asked, but any disability (except that of a trivial nature) which arises from an accident and which eventually ripens into the class of disability for which compensation is claimed. Our statute makes no distinction, in this respect, between injuries to specific members such as the eye and injuries to other parts of the body, not specifically mentioned, which may result in permanent incapacity. It does define "disability" because of an occupational disease as the state of being actually incapacitated. Art. 101, Sec. 80 [15]. This provides a special standard for this kind of disability which would not have been placed in the statute had the same standard been the one applicable to other types of cases. Since disability from occupational diseases constitutes an exception to the general rule, and there is no other exception in the Act, we are unable to make the Wisconsin distinction that eye cases are similar to cases arising from occupational diseases.

It may also be noted that the Maryland statute provides for the filing of a claim for aggravation (Art. 101, Secs 42 and 53) which indicates that the final claim is not necessarily the first one the claimant must file.

Our conclusion is that all injuries producing at first merely a slight incapacity, but subsequently becoming more serious, should be treated alike and the same rule applied to all of them. That does not mean that a workman will lose the benefit of the statute, unless he files a claim for any trifling injury which he has no reason to suppose will develop into a more serious one. *Baltimore Steel Co. v. Burch, supra.* Nor does it mean that he can wait until the permanent incapacity develops to its fullest extent before he is obliged to file his claim. As soon as it becomes reasonably apparent, or should become reasonably apparent, to a workman that he has a compensable disability of any class from an accident (whether he is working or not), he has the right to file a claim and the statute begins to run against him from that time.

Applying these views to the case before us, we find that the appellant in July and August, 1941, knew that

he had a film over his eye. That of itself was sufficient to put him on notice that he had then a compensable disability and that he had a right to file a claim for it. He did not file a claim then, nor within one year from that date, and it becomes necessary for us to conclude that he was barred from so doing when he did finally file it in May, 1945. As we find no element of estoppel in the case, the action of the court in directing verdicts on the second and third issues was correct, and the judgment must be affirmed.

*Judgment affirmed, with costs.*