WRIGHT *v.* CROWN CORK & SEAL CO.

[No. 192, October Term, 1949.]

*Decided June 9, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Marshall A. Levin,* with whom were *Levin & Levin* on the brief, for appellant.

*J. Sarsfield Sweeny,* with whom were *Hershey, Donaldson, Williams & Stanley* on the brief, for appellee.

GRASON, J., delivered the opinion of the Court.

This is a workmen's compensation case. The sole and only issue is: did the workman file his claim for compensation within the time for him to do so, as prescribed by law? Neither fraud nor estoppel is involved. The State Industrial Accident Commission denied the claim and refused compensation, because the claim was not filed "within one year after the beginning of his disability". (Supp. Code 1947, art. 101, sec. 38.) From its order the claimant appealed to the Baltimore City Court. The case was tried in that court before a jury. There was only one issue submitted to the jury: "Did the

above Claimant file his claim within the time allowed by law?" Testimony was taken and the case submitted to the jury. It answered the issue "yes", thus overruling the Commission. The judge granted a motion for judgment *non obstante veredicto*, reversed the finding of the jury, answered the issue "no", and entered a judgment for the employer for costs. The claimant appealed.

Edwin J. Wright, (claimant and appellant) was employed by the Crown Cork and Seal Company (defendant and appellee). The accident happened on September 13, 1947. Prior thereto Wright had been employed continuously by the Company for over three years as an "industrial engineer, laying out the new building". At the time of the accident, he said: "I was in the process of laying out the new building. I was down on the haunches, on the floor, and the place I had to mark for the men to come and drill holes in the floor, I had to be behind some big cases, about nine feet high and five feet in width, and two cases like that, I was told after awhile, weigh about nine hundred pounds. * * * A lift truck came the other side of the cases, tried to get under the cases, tried to lift them up, and pushed them over on me. Well, nine hundred pounds is a lot of weight to have on your back and it was crushing me." He stated he fell on the floor, was picked up and taken to the "first aid", and Dr. Pillsbury came in and examined him. He returned to work that day and continued to do the same work for the Company until it closed down on September 24, 1948.

The claim for compensation was not filed by Wright until October 28, 1948, that is, one year and 45 days from the date of the accident. He says he was injured in "the knees and the back"; that his "shoulders ached for about four months after the accident"; that the boxes hit his "head, back and the whole back of my body". There was a column that the boxes hit, that broke the force of the blow he received. His "knees ache continually". "Q. Did you, yourself, fully perform your tasks physically afterwards, as you did before? A.

Not after about four months after the accident. * * *
Q. What was the condition of your knees after this
accident and what symptoms did you notice, if any? A.
Approximately four months after the accident, I noticed
I had locking of the knees; every time I crossed my legs,
my knees would lock. I'd have to unlock the knee and put
the leg down on the floor." The doctor examined him
and told him "there was a mouse in the knees". He said
for three months after the accident "I ached all over,
I didn't feel as strong as I was before. * * * Q. What
were your symptoms September 13, 1947? A. From the
accident on, September 13, 1947, I ached all over, I was
weaker than I was before. * * * Approximately three to
four months after that, when my knees began to lock."
They "never locked before that time".

On cross examination Wright testified: From the date
of the accident, approximately three times a week, heat
treatments were applied, for "approximately three to
four months". "Q. To what parts of your body? A. To
the knees particularly." He admitted he testified before
the Commission: That he was taken to the "first aid"
after he was injured, and examined by Dr. Pillsbury,
and heat treatment was administered; both knees were
bandaged; that the locking of his knees occurred within
a week after the accident, and that was when Dr. Pills-
bury told him there was a mouse in there. "Q. Do you
remember your knees actually locking when Dr. Pills-
bury was there? A. 1 don't remember. Q. If you did
not have this locking, Mr. Wright, what symptoms did
you have in your knees, from Septmeber 13, 1947, to
October 15, 1947? A. 1 remember one time trying to
dance and they'd swell after that. Q. That was be-
tween * * * September 13 to October 15, 1947, and your
answer is that at one time you tried to dance and they
began to swell? A. That's right." And he said that
his knees continued to swell if "I exerted myself in
any way."

In his claim filed with the Commission, Wright gave the
following description of the accident: "While zoning

aisles in building, in crouching position, two crates of materials weighing about 900 lbs. came down on me."

Dr. Pillsbury testified that he first saw the claimant on September 15, 1947, at the plant, and that claimant then told him that a high-lift pushed several boxes against him "injuring his shoulders and back". On the 17th of September, 1947, he was X-rayed for "the shoulder, which included the scapula and the clavicle, and showed no evidence of any bone injury. He was continued to be seen off and on at the plant, and during September, the last record I have, was September 22nd, October 15th, October 20th—that is in 1947—then again on the 19th of October, 1948. On October 15, 1947 * * * he (claimant) returned to the plant * * * and stated that since he caught the load on his shoulder he sustained some injury to his right knee and at the time did not pay much attention to the right knee." He said to the doctor that that condition had gotten worse, and on several occasions it had locked on him. He said to the doctor: " 'The latest occurrence of locking was today in the first aid room.' That was under date of 10-15-47." There was a definite clicking sensation in the knee, which the doctor referred to as a "mouse-body". X-ray was taken and "showed no radiable bone injury about the knees". The doctor saw claimant on October 20, 1947, and did not see him again until the 19th of October, 1948. As to his condition at that time, the doctor testified: "I do not feel that any of the complaints which he has could be attributable to the injury of September 13, 1947." The claimant and Dr. Pillsbury were the only witnesses.

This uncontradicted evidence shows that the claimant was injured on September 13, 1947, while in the course of his employment with the Company. Boxes containing materials weighing 900 pounds fell and struck him (some evidently partly rested on him) and he was pinned to the floor, and the blow nearly crushed him. He was released by workmen and taken to the "first aid" at the plant, and received treatment, but returned to his

work that day and continued in his work until the plant closed down. He complained of pains in the region of his shoulders and back, and ached all over his body, and was weak. X-ray was taken of his shoulders and back. It is uncontradicted that X-ray was taken of his knees. He received heat treatment and massage to his back, and other parts of his body, two or three time a week for three months after the accident, for pains caused by the accident; he was treated under the direction of Dr. Pillsbury, who saw and examined him at least five times after the accident, at intervals between September 15, 1947 and October 20, 1947. Examinations were made, X-rays were taken on or before October 20, 1947, and the heat treatment continued for three months.

Although claimant testified that the trouble with his knees did not begin until his pain localized, about three months after the accident, and he then knew his injury was serious, it was testified to by Dr. Pillsbury that claimant told him, on one occasion he visited the doctor, that his knees locked that day while he was in the first aid room. When asked on cross examination if this was true, he said: "I don't remember." He testified that between September 13, 1947, and October 15, 1947, he tried to dance and they (his knees) "began to swell".

The question is: Did he know, or should have known, that he suffered a disability from the accident within 45 days from September 13, 1947? He states that he thought that his injury was trivial and would pass away, until it localized about three months after the accident, and it was at that time he first knew he suffered a disability caused by the accident. In other words, his contention is that for three months following the accident his injury was latent, but after that time it was patent.

In *Griffin v. Rustless Iron & Steel Co.*, 187 Md. 524, 540, 51 A. 2d 280, 288, it is said: "We think, however, that the wording of the Maryland statute indicates that the period of limitation begins to run from the time when disability becomes, or should become, reasonably

apparent. And we hold that this does not mean the particular class of disability for which compensation is asked, but any disability (except that of a trivial nature) which arises from an accident and which eventually ripens into the class of disability for which compensation is claimed." *Dunstan v. Bethlehem Steel Co.*, 187 Md. 571, 51 A. 2d 288; *Bethlehem-Sparrows Pt. Shipyard, Inc. v. Glass*, 188 Md. 501, 53 A. 2d 405; *Champness v. Glenn L. Martin Co.*, 193 Md. 188, 66 A. 2d 396.

We think it plain, from the undisputed evidence in this case, that the claimant suffered a disability at the time of the accident. While he lost no time from work, the evidence discloses that the injury he suffered was not slight and inconsequential, and that his condition at that time, and certainly within 45 days from the date of the accident, was apparent to him. His injury does not fall in that class where a claimant suffers a slight injury, goes to a doctor who tells him that his injury is slight, and continues his work, in the meantime employing home remedies, but, nevertheless, the accident occasioned a sleeping or latent injury which afterwards becomes active and results in a serious condition to the claimant. In such a case the injury is latent and does not become apparent until the sleeping injury flares up and the claimant's condition becomes known, or should have become known to him. In such a case the one year period within which a claim must be filed by the workman, with the Commission, is tolled until the latent injury caused by the accident becomes apparent. The case of *Baltimore Steel Co. v. Burch*, 187 Md. 209, 49 A. 2d 542, was such a case, and that case is strongly relied on by the claimant. Its facts are entirely different from the case at bar. In that case the injury was latent, and in this case the injury was apparent at the time of the accident, and certainly was known, or should have been known within 45 days from the date of the accident. If he had filed his claim within one year from that time, it would have been within the one year period

required by the statute. We conclude that the action of the learned judge below was correct and the judgment will be affirmed.

*Judgment affirmed, with costs.*