## GRACIE *v.* KOPPERS COMPANY, INC.

[No. 157, October Term, 1956.]

*Decided April 12, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Harold Buchman,* with whom was *Morton Guth* on the brief, for the appellant.

*Thomas E. Cinnamond,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal in a workmen's compensation case is from a judgment entered upon a directed verdict, affirming a decision of the State Industrial Accident Commission, on the ground that the appellant had not filed his claim within one year from the beginning of his disability, as required by Code (1951), Art. 101, sec. 38. There is no contention that the failure to file was induced by fraud or under circumstances raising an estoppel. The injury occurred on January 5, 1951, and the claim was not filed until June 7, 1954. The contention is that he is not barred because the causal connection between the disability and the accident was not brought home to him until April, 1954. The Commission had found that the claimant sustained an accidental injury arising out of and in the course of his employment. There was no cross-appeal.

On January 5, 1951, the appellant was employed by the appellee as an electrician. While working on some cables he grounded a spud wrench. There was an intense flash, that burned his eyes and made them watery and sore, and he went to first aid for treatment. Drops were put in his eyes and he was given dark glasses to wear and sent back to work. On the following day he went to see Dr. Baylus, who was recommended by his foreman, but was not the regular company doctor. On January 8, Dr. Baylus told him he had loss of vision due to the flash, and that "they appeared to be electric cataracts." Dr. Baylus saw him on four or five other occasions, the last being on January 23. At that time Dr. Baylus told him he "didn't believe that the accident caused the cataracts in my eye; that it was something that I had had", and "that it was not caused by the accident." His vision became progressively worse, although he lost no time from work. "From what Dr. Baylus told me, I didn't believe I had a claim * * * I didn't realize Koppers Company was responsible." In cross-examination he was asked if there was not a question in his mind as to a causal connection between the cataracts and the accident. He replied: "There would have been a question in anybody's mind when a doctor gives one report one day and another one two weeks

later." After several years, with periodic visits to Dr. Baylus, he decided to consult another doctor, because he was not satisfied. Dr. Scholz, of the Wilmer Institute, recommended an immediate operation on his right eye, and told him he felt that the injury had caused the cataracts. Before January 5, 1951, his vision had been perfect and he never wore glasses.

Dr. Baylus corroborated the claimant's testimony. He testified that he was inclined to believe at first that the opacities in the lenses of the eyes were due to the flash, but later concluded that they were congenital. He told the claimant that he had changed his opinion. In his report of January 23 to the Koppers Company he stated "that these lenticular opacities are congenital and there is no connection to his electric flash." In his first report on January 6, he had stated that the incipient cataracts were the result of the electric flash. He was now inclined to believe that the cataracts were due to the flash. Dr. Scholz was definitely of that opinion.

In *Griffin v. Rustless Iron & Steel Co.,* 187 Md. 524, the claimant sustained an injury to his eyes in an explosion in 1939, which seemed to respond to treatment. However, his eyes troubled him and he was told by a doctor he consulted in 1941 that there was a film over his eyes, which was not ripe for removal. He consulted another doctor, who told him the same thing. Finally, after about five years had passed, he consulted Dr. Hurwitz, who told him he had cataracts, and suggested that there was a causal connection between the accident and the condition then present.

After reviewing many decisions in other states, it was said (pp. 540, 541) that "the wording of the Maryland statute indicates that the period of limitation begins to run from the time when disability becomes, or should become, reasonably apparent. And we hold that this does not mean the particular class of disability for which compensation is asked, but any disability (except that of a trivial nature) which arises from an accident and which eventually ripens into the class of disability for which compensation is claimed. * * * As soon as it becomes reasonably apparent, or should become reasonably apparent, to a workman that he has a compensable disability of any class from an accident (whether he

is working or not), he has the right to file a claim and the statute begins to run against him from that time.

"Applying these views to the case before us, we find that the appellant in July and August, 1941, knew that he had a film over his eye. That of itself was sufficient to put him on notice that he had then a compensable disability and that he had a right to file a claim for it. He did not file a claim then, nor within one year from that date, and it becomes necessary for us to conclude that he was barred from so doing when he did finally file it in May, 1945." The same rule that the period of limitations begins to run from the time when the disability becomes, or should become, reasonably apparent, was applied in connection with a back injury in *Cumberland Sales v. Hilliker,* 210 Md. 70. See also *Farmers Coop. Ass'n v. Keller,* 199 Md. 670, and *Wright v. Crown Cork & Seal Co.,* 195 Md. 600.

The *Griffin* case is very close to the instant case on the facts, but we think it is distinguishable. The chief contention in that case was that since there was no permanent disability until 1945, the statute did not run until permanency became apparent. It was noted (p. 527) that "Both parties have treated the eye trouble as if it were traumatic * * *." Although the State Industrial Accident Commission had disallowed the claim on the ground that it was not caused by the accident, and a first issue on that point was submitted, the court below "directed the jury that they need not answer the first issue", apparently because it instructed a verdict on the point of limitations. In the *Griffin* case, as in the instant case, the claimant might properly have drawn the inference that since his eyesight had been unimpaired before the accident, there was a causal connection. But in the *Griffin* case there was nothing to negative the inference. Here, despite the first opinion that the cataracts were caused by the flash, Dr. Baylus a few days later gave a positive opinion that they were congenital. *Wright v. Crown Cork & Seal Co., supra,* is also distinguishable. There, the doctor told the claimant, more than a year after the injury and first treatment, that his then condition was not due to the accident. There was no evidence that he expressed any opinion before.

We have found no cases from other states that are helpful. *York v. State Industrial Commission,* 208 P. 2d 563 (Okla.), is in point on the facts as to medical advice, but the statute of limitations was construed to run whether the disability was apparent or not, which is not the Maryland rule. On the other hand, in *Wheaton's* case, 38 N. E. 2d 617, 619 (Mass.), the court seemed to take the view that knowledge, and not reason to know, must be brought home to the claimant, relying upon English cases taking the same view. *Great American Indemnity Co. v. Britton,* 179 F. 2d 60 (C. A. D. C.), is in point, but its authority is somewhat shaken by the fact it was reversed, on another ground, in *Pillsbury v. United Eng. Co.,* 342 U. S. 197. See also *Larson, Workmen's Comp.* § 78.42. The cases dealing with occupational disease, such as *Consolidation Coal Co. v. Dugan,* 198 Md. 331, and *Consolidation Coal Co. v. Porter,* 192 Md. 494, may perhaps be distinguished on the ground that their onset is insidious and could seldom be apparent to a layman. See Note, 11 A. L. R. 2d 279. Nevertheless, the reasoning of the *Dugan* case would seem to be applicable. We there held that the claimant was justified in relying on the diagnosis of his physician, and that this tolled the statute.

Aside from the factual difference between a traumatic accident and an industrial disease, the legal principle is not very different. In the one case, by construction, limitations starts to run when it becomes, or should become, reasonably apparent to a workman that he has a compensable disability. In the other, by construction, we said in *Consolidation Coal Co. v. Porter, supra* (p. 506), that limitations started to run "from the time the employee * * * knew or had reason to believe that he was suffering from an occupational disease and that there was a causal connection between his disability and occupation."

We are constrained to hold in the instant case that the claimant's failure to file his claim within a year from the time he was first told of the cataracts was not necessarily a bar to the claim, because of the fact that he was advised by Dr. Baylus a few days later that they were not caused by the flash, or, as stated in the report, that there was no "connection".

We think a reasonable man might well forbear to file a claim under the circumstances, knowing that his own medical adviser would repudiate the claim and deny its validity. True, he had some reason to doubt the correctness of the diagnosis, and there was some testimony that his delay in consulting another doctor was because he was working out of town, the expense, and other factors. Nevertheless, we think the reasonableness of his action, under all the circumstances, presented a jury question. We find no merit in the appellee's contention that even if the appellant believed he had congenital cataracts, he should have considered the possibility that the preexisting condition was aggravated by the flash. Dr. Baylus' statement was that there was no connection, which would seem to rule out aggravation.

The appellee further argues that even if the appellant relied upon the second opinion of Dr. Baylus and that was the sole reason for not filing the claim, still a pure question of law was presented. We do not follow the argument. In the absence of any motion for directed verdict by the claimant, we think the reasonableness of his delay under all the circumstances presented a question for the jury on the issue framed, under proper instructions of the court as to the applicable law.

*Judgment reversed, and case remanded for further proceedings, with costs.*