564 A.2d 797

**MONTGOMERY COUNTY, Maryland et al.**

v.

**James W. McDONALD, Jr.**

**No. 127, Sept. Term, 1988.**

Court of Appeals of Maryland.

Oct. 16, 1989.

Alfred J. Dirska, Columbia, for petitioner.

Thomas L. Heeney (Heeney, Armstrong & Heeney, both on brief), Rockville, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

RODOWSKY, Judge.

This case arises under the workers' compensation statute, Md.Code (1957, 1985 Repl.Vol., 1988 Cum.Supp.), Art. 101 (the Act). We must determine whether the two year limitations period in § 26(a)(4) thereof is tolled when the employer fails to file an occupational disease report with the Workmen's Compensation Commission (Commission) as required by § 26(b).[1] We hold that the employer's failure to file the required report does not toll the limitations period so that we reverse the decision of the Court of Special Appeals in *Montgomery County v. McDonald,* 77 Md.App. 153, 549 A.2d 766 (1988).

---

1. All statutory references are to the Act. Section 26(b) provides:
   "(b) *Employer to report disability.*—Whenever a disability from an occupational disease occurs to any employee it shall be the duty of the employer promptly upon obtaining knowledge or notice thereof, to at once report such disability to the Commission, and also to any local representative of the Commission. Such report shall state (1) the time, cause and nature of the disability, and the probable duration; (2) whether the disability from an occupational disease arose out of and in the course of the injured person's employment; (3) any other matters the rules and regulations of the Commission may prescribe."

James W. McDonald, Jr. (McDonald) is a civilian police dispatcher for the Montgomery County Police Department. On August 5, 1977, he suffered a heart attack, his first, as a result of which he was unable to work until his return to work on October 3, 1977. At or about that time McDonald made no claim with the Commission for workers' compensation, and Montgomery County filed no employer's first report of injury. It is conceded that both McDonald and Montgomery County had actual notice, as early as October 1977, that McDonald's first heart attack was attributable to stress caused by his employment.

McDonald suffered a second heart attack on August 1, 1984. On August 23, 1984, he filed a claim for workers' compensation, based on his second heart attack. He alleged that he sustained an occupational disease on August 1, 1984, as a result of which he was disabled from August 2, 1984, and continuously thereafter, for which he sought temporary total and permanent partial disability.

On September 5, 1984, McDonald filed another claim form with the Commission in which he alleged that he sustained an occupational disease, a heart attack, on August 5, 1977, as a result of which he had been temporarily totally disabled from August 6 to October 2, 1977, that he had been permanently and partially disabled from October 3, 1977, and that he had been temporarily totally disabled on August 2, 1984, and continuously thereafter. At argument in this Court McDonald's counsel frankly acknowledged the underlying theory of the claim to be that both heart attacks involve the same occupational disease.

"[D]ue to [an] oversight by management," Montgomery County did not file any employer's first report of injury until October 11, 1984.

The Commission disallowed any compensation. In its file involving the first heart attack the Commission found that McDonald

"sustained an occupational disease arising out of and in the course of his employment due to heart disease and the

date of disablement was [August 6], 1977; however, the ... claim is barred by the Statute of Limitations, and the employer's failure to promptly file an Employer's First Report of Injury did not extend the time for filing of the employee's claim for compensation, there being no provision for such extension in Section 26(b)...."

The award in the Commission's claim file generated by the second heart attack found that it was causally related to the first heart attack and was barred by limitations as well.

McDonald appealed both awards to the Circuit Court for Montgomery County. On summary judgment that court concluded limitations had been tolled. It reversed and remanded the claim based on the first heart attack to the Commission for further proceedings.[2] Montgomery County (together with its insurer as of the time of the first heart attack) noted an appeal to the Court of Special Appeals, which affirmed. *Montgomery County v. McDonald,* 77 Md.App. 153, 549 A.2d 766 (1988).

---

**2.** The circuit court's order applies only to Commission Claim No. A–94–60–41 in which McDonald treated the 1977 heart attack as the occupational disease which caused all later disabilities. There was no certification of that order for immediate appeal under Maryland Rule 2–602(b). This raises the question of whether the order appealed from was a final judgment. We conclude that it was, because of the way in which the claims for compensation were packaged in the Commission.

The compensation claim based on the 1984 heart attack was a distinct file in the Commission, and the later filed claim, based on the 1977 heart attack as the cause of all subsequent disabilities, was a separate and distinct file in the Commission. In circuit court pleading parlance, each of these files was a separate "action." Each action was decided in the Commission by a separate order. Each order was appealed. The files in both Commission actions were transferred to the circuit court where they were filed as one proceeding and assigned one civil action number. The legal effect of that docketing was to consolidate for pleading and trial two appeals from the Commission. The order of the circuit court deciding one of those appeals was a final order in one of two consolidated actions and was appealable. *See Yarema v. Exxon Corp.,* 305 Md. 219, 503 A.2d 239 (1986).

The corollary of this conclusion is that the appeal from Commission Claim No. A–94–41–92 is still undecided in the Circuit Court for Montgomery County.

The intermediate appellate court compared Art. 101, § 26(b) with § 38(b).[3]  *Id.* at 157–59, 549 A.2d at 768–69. Section 38(b) requires that an employer report an accident to the Commission when that accident results in the disability of an employee "for a period of more than three days following the happening of such accident. . . ."  The report must be filed within ten days after the employer has received notice of the accident.  Additionally, § 38(c) provides that the limitations period for bringing an action arising from an accidental injury does not run until the report required by § 38(b) is filed with the Commission.[4]

The Court of Special Appeals determined that the sanction provided by § 38(c) was implied in § 26(b).  That court thought that it was significant that § 38(b) affords an employer ten days leeway in which to file the report, while "§ 26(b) emphatically adjures that an employer shall 'at once report' to the Commission a disability from an occupational disease occurring to any employee."  *Id.* at 159, 549

---

3.  Section 38(b) provides:
   "(b) *Report of accident by employer.*—Whenever an accident causing disability for a period of more than three days following the happening of such accident occurs to any employee, it shall be the duty of the employer within ten (10) days after the receipt of notice of such accident, oral or written, to report such accident and injury resulting therefrom to the Commission.  Such report shall state (1) the time, cause and nature of the accident and injuries, and the probable duration of the injury resulting therefrom;  (2) whether the accident arose out of and in the course of the injured person's employment;  (3) any other matters [the] rules and regulations [of] the Commission may prescribe."

4.  Section 38(c) provides:
   "(c) *Effect of employer's failure to file report after having been given notice.*—Where the employer has been given notice, or the employer, or his designated representative in the place where the injury occurred, has knowledge of any injury or death of an employee, and the employer fails, neglects or refuses to file a report thereof, as required by the provisions of subsection (b) of this section, the limitations prescribed by this article shall not begin to run against the claimant or any person entitled to compensation until such report shall have been furnished as required by subsection (b) of this section.  This section shall not apply to an 'employee' as defined by § 67(4) of this article."

A.2d at 769. Not to apply the sanction provided by § 38(c) to § 26(b) would, the court held, cause the words "to at once report" to be "devoid of substance." *Id.* We granted certiorari in order to determine whether the Court of Special Appeals was correct in its construction of § 26(b). 314 Md. 629, 552 A.2d 894 (1989).

The argument in this Court has involved an additional legal theory, advanced by McDonald, beyond the implied sanction analysis relied upon by the Court of Special Appeals. McDonald's second theory, which we discuss in part II, is premised on inclusion of the words "occupational disease" in the § 67(6) definition of "accidental injury."

I

The Court of Special Appeals has judicially implied, construed or created a tolling sanction in occupational disease cases for an employer's failure to file a report with the Commission as required by § 26(b). We reverse because tolling (1) changes the effect of the mandatory language in the statute of limitations in § 26(a)(4); (2) is based on an inappropriate analogy to accidental injury cases; (3) violates the legislative intent as manifested by that body's rejection of the tolling device in favor of a greatly enlarged period of limitations; and (4) departs from the clear majority rule under which courts decline judicially to toll limitations based on an employer's failure to report a work-related injury or occupational disease.

A

Although the reporting requirement of § 26(b) indeed contains mandatory language, judicially to write into the statute a tolling remedy changes the mandatory command of the two-year statute of limitations in § 26(a)(4) for occupational diseases. That provision reads in part:

"If no claim for disability or death from an occupational disease be filed with the ... Commission within 2 years ... from the date of disablement or death, or the date when the employee or his dependents first has actual

knowledge that the disablement was caused by the employment, the *right to compensation for the disease shall be forever barred....*"

(Emphasis added).

■ Undoubtedly the Act is to be construed liberally in favor of injured employees and to effectuate its remedial purposes, but a liberal rule of construction does not mean that courts are free to disregard the provisions comprising the Act. *See, e.g., Lockerman v. Prince George's County,* 281 Md. 195, 202 n. 5, 377 A.2d 1177, 1182 n. 5 (1977) (Although the Act is to be liberally construed, the Court is "not at liberty to disregard its clear meaning."); *Subsequent Injury Fund v. Thomas,* 275 Md. 628, 635, 342 A.2d 671, 675 (1975) (Although the Act "is to be liberally construed ... this does not mean that the Act should be construed to provide for compensation beyond that authorized by its provisions and purpose."); *Clement v. Minning,* 157 Md. 200, 204, 145 A. 485, 486 (1929) ("While it is our duty to give the [Act] a liberal interpretation, to effectuate its remedial purposes, we have no authority to apply it beyond the limits which it has prescribed.").

The foregoing rule of construction is particularly apt for the subject limitations provision.

"[T]he general purpose of the applicable workmen's compensation act to compensate injured workers should not be used to interpret the limitations provision, because the very existence of a limitations provision in the act indicates that the legislature has deliberately compromised the general compensation purpose in the interests of the purposes served by a limitations provision."

Kelley, *Statutes of Limitations in the Era of Compensation Systems: Workmen's Compensation Limitations Provisions for Accidental Injury Claims,* 1974 Wash.U. L.Q. 541, 603.

We cannot add a purportedly intended, but omitted, tolling provision to § 26(b) through the process of statutory construction because that would change, in effect, the man-

datory language "shall be forever barred" in § 26(a)(4) to the words "shall be forever extended," in cases where a report is not filed.  Implying a tolling effect for the statute's reporting obligation "carries within it the fascinating possibility of an unending period for filing [a] claim, in the inevitable occasional case in which the employer has either overlooked the duty of filing the report or filed a defective one."  2B A. Larson, *The Law of Workmen's Compensation* § 78.49(b) at 15–367 (1989).[5]

## B

The Court of Special Appeals and McDonald would treat the accidental injury reporting provision, § 38(b), and the occupational disease reporting provision, § 26(b), as operating identically.  But treating § 38(b) and § 26(b) as providing identical remedies for an employer's failure timely to file a first report ignores the substantive and procedural differences between the notice-giving, report-filing and claim-making provisions for the two types of compensable disabilities.

Under § 38(a) notice must be given to the employer within ten days after an accident (thirty days in cases of death), and, under § 38(b), the employer must report the accident to the Commission within ten days thereafter.  The Commission may excuse the employee's failure to give notice, either on the ground that notice for some sufficient reason could not have been given or if the employer or insurer has not been prejudiced by the lack of notice. § 38(a).  The worker who has suffered an accidental injury

---

**5.** The repeal of the caps on employer liability for occupational disease claims by Ch. 706 of the Acts of 1980 now makes this "fascinating possibility" real.  Formerly, Md.Code (1957, 1979 Repl.Vol.), § 23(c) provided that in occupational disease cases, other than pulmonary dust disease cases, disablement or death had to result within one year after the last injurious exposure in order to be compensable.  In cases of silicosis, asbestosis and other pulmonary dust diseases, disability or death had to occur within seven years after the employee had knowledge that he had been affected by such disease. § 23(d).  The legislative history of the repeal of former § 23(c) and (d) is discussed, *infra.*

must file a claim with the Commission within sixty days after the accidental injury, but the Commission has the same discretion applicable to notices to employers to excuse failure to meet that filing deadline. § 39(a). In any event, the Act further provides "that failure of an employee to file a claim for compensation within two years from the date of the accident shall constitute a complete bar to any claim under [the Act]." *Id.* Thus, in accidental injury cases, the statutorily standard time-span between the accident and notice to the employer is no more than ten days, and the time-span from an accident to the filing of a compensation claim is no more than two years.

On the other hand, incremental onset of an occupational disease is the rule rather than the exception. *See, e.g., Shifflett v. Powhattan Mining Co.*, 293 Md. 198, 200–01, 442 A.2d 980, 982 (1982) ("asbestosis cases are unlike claims arising out of industrial accidents, in which some disability ordinarily is manifest at the time of the accidental injury or relatively soon thereafter"); *Babcock & Wilcox, Inc. v. Steiner*, 258 Md. 468, 474, 265 A.2d 871, 875 (1970) ("asbestosis, like other pulmonary dust diseases, is insidious in its onset"); *Foble v. Knefely*, 176 Md. 474, 486, 6 A.2d 48, 53 (1939) ("an occupational disease ... is ordinarily slow and insidious in its approach").

Under the occupational disease notice and reporting scheme, the employee must give notice to the employer within one year after the employee has knowledge that he or she is suffering from an occupational disease. § 26(a)(1). We have held that this provision also requires knowledge or reason to believe on the part of the worker or someone on the worker's behalf that there was a causal connection between the disability and the occupation. *See Mutual Chem. Co. v. Pinckney*, 205 Md. 107, 116, 106 A.2d 488, 492 (1954); *Consolidation Coal Co. v. Porter*, 192 Md. 494, 506, 64 A.2d 715, 721 (1949). The occupational disease claimant must make a claim with the Commission "within 2 years, or in the case of a pulmonary dust disease within three years, from the date of disablement or death, or the date when the

employee or his dependents first [have] actual knowledge that the disablement was caused by the employment[.]" § 26(a)(4). Thus, in cases of occupational diseases where the latency periods are very extended, the claim for compensation benefits commonly will not be made until decades after the worker first contracted the disease and possibly not until decades after the last injurious exposure. Under § 23(b) it is the employer at the time of the last injurious exposure to whom notice is given and against whom the claim for compensation is made. *See Shifflett,* 293 Md. at 202, 442 A.2d at 982.

Even though the legislative history does not explicate why there is a tolling provision in accidental injury cases and none in occupational disease cases, it is beyond debate that notice and claim of an accidental injury are relatively contemporaneous with the accidental injury, while a great gulf of time commonly separates notice and claim from the exposure to an occupational disease. The General Assembly could well have concluded that the time for notice and claim in the occupational disease case should not be pushed back further from the time of exposure simply because of an administrative snafu by the employer. We shall not make parallel two systems which are so substantially different.

C

The substantial likelihood is that the Act contains a tolling provision for accidental injury cases and does not contain a tolling provision for occupational disease cases because of deliberate legislative policy choices.

The tolling provision in § 38(c) was added by Ch. 814 of the Acts of 1957 which also amended § 39(a) "to provide certainty with respect to the period of limitations." *Douglas v. American Oil Co.,* 235 Md. 4, 7, 200 A.2d 57, 58 (1964). Prior to the 1957 amendment, the limitations period for accidental injury cases did not begin to run until "after the beginning of [the] disability." Md.Code (1951), Art. 101, § 38. Judicial gloss placed upon this language had held

that the limitations period commenced when the disability was *apparent* to the claimant, in effect, a discovery rule. *See Gracie v. Koppers Co.,* 213 Md. 109, 112–14, 130 A.2d 754, 756–57 (1957); *Griffin v. Rustless Iron & Steel Co.,* 187 Md. 524, 540, 51 A.2d 280, 288 (1947); *see generally Dintaman v. Board of County Comm'rs,* 17 Md.App. 345, 303 A.2d 442 (1973).

Chapter 814 changed the commencement date for the limitations period for accidental injuries from "after the beginning of [the] disability" to "the date of the accident." 1957 Md.Laws 1500, 1505. The simultaneous addition of the tolling provision in § 38(c) may well have been intended to mollify the impact of the elimination of the discovery rule for accidental injury claims. At the time of the 1957 changes there would have been no comparable purpose in adding a tolling provision for the limitations period in occupational disease cases. That period ran "from the time the employee or someone in his behalf knew or had reason to believe that he was suffering from an occupational disease and that there was a causal connection between his disability and occupation...." *Porter,* 192 Md. at 506, 64 A.2d at 721. The same holds true today. *See* § 26(a)(4).

Whether a tolling provision should be added to the occupational disease provisions of the Act was again an issue before the General Assembly in 1980, as a result of the *Report of the Governor's Study Commission on Workmen's Compensation Coverage* (1980) (the Report). That Commission limited its study to occupational disease provisions and made a number of recommendations, not all of which were unanimous. Spokesperson for the minority viewpoint on the Commission was Maurice J. Pressman, Esq. (Pressman). *See* Letter from Pressman to Governor Harry Hughes (Jan. 30, 1980) and Pressman's additional written comments (Mar. 7, 1980), both on file with the Department of Legislative Reference. The Commission, apparently unanimously, recommended a tolling provision similar to that in § 38(c) for addition to § 26. Report at 16.

One of the substantial differences between the Commission majority and the Pressman group involved limitations caps. Prior to July 1, 1980, former § 23(d) (Md.Code (1957, 1979 Repl.Vol.)) required for compensability in pulmonary dust disease cases that the "disability or death shall occur within seven (7) years after the employee has knowledge that he has been affected by" the disease, and former § 23(c) required disablement or death to result within one year after the last injurious exposure in all other occupational disease cases. The Commission majority voted to retain a cap by expanding the seven-year provision to all occupational diseases. The Pressman group wanted the cap totally eliminated. Report at 23–24.

In the 1980 General Assembly the Commission's recommendations were introduced as Senate Bill 973, a departmental bill. *See* 1980 Md.Sen.J. 1067. A bill which reflected the Pressman position as to limitations caps and other issues was introduced by Senator Norman R. Stone, Jr. as Senate Bill 396. *See* 1980 Md.Laws 2428. Senate Bill 396, after substantial amendment, was enacted as Ch. 706 of the Acts of 1980. *See id.*

That the departmental bill, containing a tolling provision, was rejected is not of particular significance because it is clear that larger issues than tolling were involved in the package of Commission recommendations. What is significant is the treatment, or more precisely, non-treatment, of the tolling issue in Senator Stone's bill. Prior to 1980 § 26(a) required the employee to give notice of an occupational disease to the employer within thirty days "after the employee has actual knowledge" of the occupational disease. Md.Code (1957, 1979 Repl.Vol.), § 26(a). The Report recommended, unanimously, that the thirty-day requirement of former § 26(a) be retained. Report at 15. The Stone bill, however, modified the provision to that found in present § 26(a)(1), requiring notice within "1 year after the employee knows or has reason to believe he is suffering from an occupational disease." *See* 1980 Md.Laws at 2433.

It seems clear that the Legislature deliberately chose to extend the time for notice to an employer from thirty days to one year in lieu of a tolling provision. Thus, tolling was rejected, not by rejection of the departmental bill, but in the structuring of the Stone bill. Judicially adding a tolling provision would extend limitations beyond the deliberate statutory scheme and legislative purpose.

### D

There are workers' compensation statutes in other states which require the employer to report an accident or disease but which are silent on whether a failure timely to comply with that requirement tolls the limitations period. No cases could be found in which a tolling provision was implied as a sanction for the employer's failure to report. Rather, "[it] is generally held ... that where the act contains no such provision ..., the mere failure on the part of an employer to report the accident does not, in the absence of fraud, toll the running of the statute as to the time for filing a claim for compensation." *DeRousse v. PPG Indus., Inc.*, 598 S.W.2d 106, 113 n. 8 (Mo.1980) (en banc) (quoting *Duncan v. Gaffney Mfg. Co.*, 214 S.C. 502, 508, 53 S.E.2d 396, 398 (1949)).

A Georgia case reasoned:

"In the absence of any fraud on the part of the employer, the employer's mere failure to report the accident as required therein does not toll the running of the statute as to the time for filing a claim for compensation.... The reasoning of this rule is that the failure of the employer to make a report of the accident has nothing whatever to do with the employee's failure to file, or delay in filing, his claim for compensation on account of such accident."

*Welchel v. American Mut. Liab. Ins. Co.*, 54 Ga.App. 511, 513, 188 S.E. 357, 358 (1936), *overruled on other grounds Brown Transp. Corp. v. James*, 243 Ga. 701, 257 S.E.2d 242 (1979). *See also Elkhorn Collieries Co. v. Robinson*, 234 Ky. 24, 27, 27 S.W.2d 393, 394 (1930); *cf. Poythress v. J.P.*

*Stevens & Co.,* 54 N.C.App. 376, 283 S.E.2d 573 (1981) (employer's failure to give notice to Industrial Commission of employee's accident, although subject to fine, did not toll limitations bar, either through estoppel or waiver, as "the report becomes a part of the private records of the Commission, not open to the public, and the Commission, *for statistical purposes,* must compile the information contained in the report." *Id.* at 385, 283 S.E.2d at 579 (quoting *Whitted v. Palmer–Bee Co.,* 228 N.C. 447, 456, 46 S.E.2d 109, 114 (1984) (Barnhill, J. concurring) (emphasis added in *Poythress*)).

These cases dovetail with *Kaiser Found. Hosp. v. Workers' Compensation Appeals Bd.,* 39 Cal.3d 57, 702 P.2d 197, 216 Cal.Rptr. 115 (1985) (en banc), where the California Supreme Court held that "[i]f the employer breaches its statutory duty to notify an employee ... of his workers' compensation rights ..., the limitations period is tolled for the period of time that the employee remains unaware of his rights." *Id.* at 60, 702 P.2d at 199, 216 Cal.Rptr. at 117. The court added a tolling remedy because it found that "[a]n employee would be *prejudiced* without the tolling if he has no knowledge that his injury might be covered by workers' compensation before he receives notice from the employer." *Id.* at 64, 702 P.2d at 202, 216 Cal.Rptr. at 120 (emphasis added). But if the employee gains actual knowledge of his rights, he is not prejudiced by the employer's failure to give notice, and "there is no reason to toll the statute of limitations even if his employer never advises him of his workers' compensation rights." *Id.* at 65, 702 P.2d at 202, 216 Cal.Rptr. at 120. Thus, according to the court, "[r]equiring prejudice to toll the limitations period promotes the policy behind the notification statutes: to protect those unaware of their rights." *Id.*

If an employer fails to file a § 26(b) report with the Commission, no prejudice results to the employee. The reporting obligation is imposed for the benefit of the Commission, and the public in general, not the individual em-

ployee.[6] The employer's report of an employee's occupational disease to the Commission does not generate any notice of a right to workers' compensation that is given to the employee by the Commission. Thus, the failure of the employer to report the occupational disease has no connection with the employee's ability to file a claim within the limitations period. *Cf. Walter J. Crismer & Son, Inc. v. Seal,* 258 Md. 437, 265 A.2d 918 (1970) (failure of employer to post notice advising employees that claims must be filed within sixty days of accident, as required by Commission regulation, held not to estop employer from pleading limitations bar); *Dunstan v. Bethlehem Steel Co.,* 187 Md. 571, 577, 51 A.2d 288, 291 (1947) (employer's failure to file report did not amount to an estoppel as "claimant was in no way prejudiced by failure of employer to report the accident promptly"). Although judicial imposition of a tolling provision may provide an incentive for employers to report occupational diseases, to do so creates, as Professor Larson called it, an "unending" limitations period even though that employee is in no way prejudiced by the employer's failure to report. *See* Larson, *supra.*

The New Jersey Supreme Court, in *Herod v. Mutual Chem. Co.,* 115 N.J.L. 369, 180 A. 432 (1935), declined to imply a tolling effect for the employer's failure to file an occupational disease report. The legislative history of New Jersey's workers' compensation statute developed similarly to this State's. Occupational disease provisions were added to the existing accidental injury scheme of the New Jersey statute. *See id.* at 370, 180 A. at 432. The New Jersey legislature placed the limitations periods for each type of disability in separate provisions, "thereby conspicuously indicat[ing] its intention to deal with the limitation of claims for occupational disease separately from the limitation of claims arising out of injuries." *Id.* at 370, 180 A. at 433.

---

6. The reporting results are presumably used to calculate the statistics published each year in the Commission's annual report to the Governor as required by § 14(b).

By a later enactment, that legislature required employers to make certain reports of accidents and occupational diseases to the Workmen's Compensation Bureau. *See id.* at 370–71, 180 A. at 433. As a penalty for the employer's failure to report, the employer was fined $50 for both classes of injury, but the statute only tolled limitations in instances of accidental injury. *See id.* at 371, 180 A. at 433. The issue was whether the court should expand the tolling provision to occupational disease claims.

The court refused to imply a tolling effect which it labeled a "legislative function." *Id.* at 372, 180 A. at 433. Pointing to the differences between the two limitations periods, the court reasoned:

"Section 22(e) provides that the claim for compensable occupational disease shall be barred unless a petition is filed within one year after [the] date on which the employee ceased to be exposed to such occupational disease, whereas Section 23(h) provides that the claim for personal injury or death resulting from accident shall be forever barred unless a petition is filed within one year after the date on which the accident occurred. The inconsistency is apparent. It may be that the Legislature intended in occupational diseases to let the defense of the statute of limitations remain even though the report was not filed because of the difficulty of determining when an employee has an occupational disease. The date of the occurrence of an accident is definite as a general rule. The date when an occupational disease is incurred is indefinite."

*Id.* at 372–73, 180 A. at 434.

The Missouri Supreme Court has also refused to toll the limitations period for an employer's failure to file an accidental injury report. *DeRousse v. PPG Indus., Inc.,* 598 S.W.2d 106 (Mo.1980) (en banc). The court upheld a line of Missouri cases governing the issue and found the analysis employed in those cases to be applicable. Among the reasons cited was that " '[t]he failure to report an accident, by the employer, in no way prevents the injured employee

from filing a claim for his injuries with the commission.' " *Id.* at 110 (quoting *Wheeler v. Missouri Pacific R.R.,* 328 Mo. 888, 897, 42 S.W.2d 579, 583 (1931)). In addition, to toll the limitations for an employer's failure to report would defeat one of the purposes of the statute of limitations:

> " 'One purpose of limitation statutes is to prevent the filing of fictitious claims at a late date when investigation as to their genuineness has been rendered difficult by lapse of time. This purpose would be defeated entirely if a plaintiff were permitted to escape the limitation period by pleading that the alleged accident had not been reported by the employer. Such a rule would open the door to the filing of fraudulent fictitious claims to which the limitation[s] statutes have always been a bar.' "

*Id.* (quoting *Wheeler,* 328 Mo. at 898, 42 S.W.2d at 583–84). Lastly, the court noted that the provision in question did not expressly toll the limitations (although a criminal penalty was provided) and "[h]ad the legislature intended that the employer's neglect or failure to file a report of injury should toll the limitations period, it 'would have adopted the simple, certain, and easy method of directly incorporating such provision.' " *Id.* at 111 (quoting *Higgins v. Heine Boiler Co.,* 328 Mo. 493, 510, 41 S.W.2d 565, 573 (1931)).

Other jurisdictions have rejected the opportunity impliedly to toll the limitations period in cases where the employer has failed to report an occupational disease or work-related personal injury. These courts generally follow the express terms of the statute, which usually imposes criminal sanctions and fines for the employer's failure to report, and "decline claimants' invitation to [toll the limitations], especially given the legislature's clear intent to the contrary." *Bainbridge v. Boise Cascade Plywood Mill,* 111 Idaho 79, 82, 721 P.2d 179, 182 (1986). *Accord Asato v. Meadow Gold Dairies–Haw.,* 68 Haw. 111, 706 P.2d 13 (1985) (per curiam); *Oklahoma Cotton Coop. Ass'n Compress v. Thomas,* 560 P.2d 562 (Okla.1977); and *Duncan v. Gaffney Mfg. Co.,* 214 S.C. 502, 53 S.E.2d 396 (1949).

For all the reasons set forth above, we decline Mc-Donald's invitation judicially to incorporate a tolling provision into § 26(b). If the failure of employers "promptly upon obtaining knowledge or notice of a disability from an occupational disease" to "at once" report to the Commission requires a sanction, the General Assembly can choose whether the appropriate sanction is a fine, increased disability benefits, tolling, or some other penalty, and expressly provide for the same.

## II

■ McDonald's second argument in support of tolling is based on the definition appearing in § 67(6). It reads in relevant part:

> " '*Injury*,' '*personal injury*,' '*accidental injury*' and '*accidental personal injury*' means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom, including frostbite and sunstroke resulting from weather condition, occupational disease and includes an injury caused by the wilful or negligent act of a third person directed against an employee in the course of his employment."

McDonald reads this definition to include all occupational diseases within the defined terms, even if they are unrelated to an accidental injury. Because § 38(b) states that "it shall be the duty of the employer within ten (10) days after the receipt of notice of such accident and injury resulting therefrom ... to report such accident ... to the Commission," McDonald says the duty arises under § 38(b) to report an occupational disease. Because "injury" in § 38(c) also includes occupational disease, McDonald argues that "[w]here the employer ... has knowledge of any injury ... and the employer fails ... to file a report thereof as required by [§ 38(b)]," limitations are tolled pursuant to § 38(c) in occupational disease cases.

Section 67(6) took the above-quoted form by Ch. 671 of the Acts of 1973. Section 67(6) as it appears in that session

law is reproduced below. (Brackets indicate deletions from then existing law, and words appearing entirely in upper case letters indicate additions to then existing law.)

" 'Injury,' 'personal injury,' 'accidental injury' and 'accidental personal injury' means only accidental injuries arising out of and in the course of employment and such [occupational] disease or infection as may naturally result therefrom, including frostbite and sunstroke resulting from weather condition, OCCUPATIONAL DISEASE and includes an injury caused by the wilful or negligent act of a third person directed against an employee in the course of his employment."

1973 Md. Laws at 1405. The purpose of the definition is to include within an accidental injury disability brought about by diseases or infections which may naturally result from that accidental injury. As the definition stood prior to the 1973 amendment, occupational diseases were the only diseases naturally resulting from an accidental injury which could be included in the accidental injury. By removing "occupational" as a qualifier of "disease," that limitation on diseases naturally resulting from accidental injuries was removed. The insertion of "occupational disease" in the class of express inclusions, along with frostbite and sunstroke, deals with an occupational disease which may naturally result from an accidental injury. The concern seems to have been that, in the workers' compensation context, the unqualified word, "disease," might be construed to be limited to a non-occupational disease, particularly where the word occupational had been deleted as a modifier.

In any event, McDonald's argument proves too much. It was clearly not the legislative intent in amending the definition of injury by Ch. 671 to have "injury," "personal injury," "accidental injury" and "accidental personal injury" automatically include any occupational disease, including one which did not naturally result from an accidental injury. This is plain from other amendments to the Act made as part of Ch. 671 where the words, "occupational disease,"

were expressly inserted following use of one of the various forms of the word "injury."

Section 19(d) deals with certain agreements to indemnify "for loss or damage on account of the injury of an employee by accidental means or occupational disease...." The words "or occupational disease" were added to § 19(d) by Ch. 671. *See* 1973 Md. Laws at 1399.

Section 66(2) deals with the monetary assessment levied on all awards for the benefit of the Subsequent Injury Fund. The last sentence of the first paragraph of § 66(2) provided that those assessments were to be paid in addition to any payment of compensation to "injured employees." Chapter 671 amended that sentence to delete the words "injured employees" and to substitute "employees who are injured or sustain an occupational disease." *See id.* at 1404.

Section 67, the definition section, in subsection (7), provides that " '[d]eath' when mentioned as a basis for the right to compensation means only death resulting from such injury or occupational disease." The words "or occupational disease" were added by Ch. 671. *Id.* at 1405. In Ch. 671 the amendment to § 67(7) immediately follows the amendment to § 67(6) on which McDonald relies.

Chapter 671 contained a SEC. 2 which provided "[t]hat this Act shall not apply to accidental injuries sustained or occupational diseases incurred prior to July 1, 1973." *Id.*

In the instant matter it is not contended that McDonald's occupational disease naturally resulted from an accidental injury. Consequently, even if there might be some interrelation between § 38(c) tolling and § 67(6), a point on which we intimate no opinion, McDonald gets no benefit from the § 67(6) definition in this case.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR THE ENTRY OF A JUDGMENT REVERSING THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMANDING THIS CASE TO THE CIRCUIT COURT FOR MONT-

GOMERY COUNTY FOR THE ENTRY OF A JUDGMENT AFFIRMING THE FINAL ORDER OF THE WORKMEN'S COMPENSATION COMMISSION IN ITS CLAIM NO. A-94-60-41. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.

ADKINS, J., dissents.

ADKINS, Judge, dissenting.

Because I believe the statute of limitations was tolled by Montgomery County's failure to file the report required by Maryland Code (1957, 1985 Repl.Vol.), Art. 101, § 26(b), I respectfully dissent. I have no quarrel with the analysis set forth in Part II of the majority opinion. It is Part I that troubles me.

To recapitulate the statutory scheme briefly, Article 101, § 38(b) requires an employer to report to the Commission an accidental injury "within [10] days after the receipt of notice of such accident, ... and injury resulting therefrom...." Section 26(b) requires a similar report by the employer "promptly upon obtaining knowledge or notice" that an employee is subject to "a disability from an occupational disease...." The accidental injury section expressly provides that the employee's failure to report tolls "the limitations prescribed by this article...." Section 38(c). There is no parallel explicit tolling provision in § 26.[1] What conclusions should be drawn from this apparent lack of statutory symmetry?

We have repeatedly stated "that the cardinal rule of statutory construction is to ascertain and effectuate the actual intention of the legislature." *Lovellette v. City of Baltimore*, 297 Md. 271, 282, 465 A.2d 1141, 1147 (1983); *see generally In re Kemmo N.*, 315 Md. 193, 195–196, 553

---

1. The statutory provisions are quoted in full in the majority opinion. At 467 n. 1, 469 n. 2, 564 A.2d at 798 n. 1, 799 n. 2.

A.2d 1273, 1274 (1989). In particular, the Workmen's Compensation Act is to be construed

> as liberally in favor of injured employees as the Act's provisions will permit so as to effectuate its benevolent purpose as remedial social legislation. Any uncertainty in the meaning of the statute should be resolved in favor of the claimant.

*Lovellette,* 297 Md. at 282, 465 A.2d at 1147; *see also Howard Co. Ass'n, Retard. Cit. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980) (same).

As we have seen, § 26(b) declares that "it *shall* be the duty of the employer promptly upon obtaining knowledge" of a disability from an occupational disease, suffered by an employee, to report to the Commission. [Emphasis supplied]. "We have stated on numerous occasions that under the settled principles of statutory construction the word 'shall' is presumed to have a mandatory meaning." *State v. In re Patrick A.,* 312 Md. 482, 490, 540 A.2d 810, 813 (1988); *see also, e.g., Carter v. Harris,* 312 Md. 371, 377, 539 A.2d 1127, 1130 (1988); *State v. One 1980 Harley Davidson,* 303 Md. 154, 160, 492 A.2d 896, 899 (1985); *State v. Hicks,* 285 Md. 310, 403 A.2d 356, *on motion for reconsideration,* 285 Md. 334, 334, 403 A.2d 368, 369 (1979). Unless the legislative purpose suggests otherwise, "shall" " 'denotes an imperative obligation inconsistent with the exercise of discretion.' " *In re Patrick A.,* 312 Md. at 490, 540 A.2d at 814 (quoting *In re James S.,* 286 Md. 702, 709, 410 A.2d 586, 589 (1980), in turn quoting *Johnson v. State,* 282 Md. 314, 321, 384 A.2d 709, 713 (1978)).

Section 26(b), then, imposes on the employer a duty to report if the statutory conditions are met, but unlike § 38, it provides no express sanction for nonperformance of the duty. The question becomes what sanctions, if any, should be applied in order to effect the legislative goal. *In re Patrick A.,* 312 Md. at 490–493, 540 A.2d at 814–815; *In re Keith W.,* 310 Md. 99, 102–107, 527 A.2d 35, 37–39 (1987); *State v. Werkheiser,* 299 Md. 529, 533–536, 474 A.2d 898, 900–902 (1984). In the absence of an express sanction, the

purpose of the statute is determinative of the sanction, if any, to be implied.

For example, in *State v. Peterson*, 315 Md. 73, 90, 553 A.2d 672, 680–681 (1989), this Court reasoned that Maryland Rule 4–346(c)'s apparent mandate that a probation revocation hearing "shall be held before the sentencing judge, whenever practicable" conferred no enforceable rights on individual litigants. We held that violation of the rule did not carry a sanction which would inure to the benefit or detriment of a litigant. *Id.* *See also, e.g., In re Dewayne H.*, 290 Md. 401, 407, 430 A.2d 76, 80 (1981) (failure to comply with Rule 915a's requirement that a disposition hearing in a juvenile proceeding "shall be held no later than thirty days after the conclusion of the adjudicatory hearing" does not require sanction of dismissal); *Resetar v. State Bd. of Education*, 284 Md. 537, 547–550, 399 A.2d 225, 230–232, *cert. denied*, 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979) (failure to follow rule requiring county board of education to decide case within specific time period does not deprive board of power to act beyond that time period); *Snyder v. Cearfoss*, 186 Md. 360, 370, 46 A.2d 607, 611 (1946) (no sanction for circuit court's failure to comply with requirement of Art. IV, § 23 of the Maryland Constitution that circuit court judges "shall render their decisions ... within two months after" argument or submission); *McCall's Ferry Co. v. Price*, 108 Md. 96, 112–114, 69 A. 832, 838–839 (1908) (no sanction for Court of Appeals' failure to comply with requirement of Art. IV, § 15 of the Maryland Constitution that decisions of this Court "shall be filed within three months after" argument or submission); *Harvey v. State*, 51 Md.App. 113, 120–121, 441 A.2d 1094, 1097–1098, *cert. denied*, 293 Md. 616 (1982) (release of defendant not proper sanction for failure to follow mandatory time requirements of former Art. 59, §§ 27 and 27A, regarding completion of a mental evaluation after defendant is found not guilty by reason of insanity); *and see Lewis v. State*, 79 Md.App. 1, 17, 555 A.2d 509, 517, *cert. denied*, 316 Md. 549, 560 A.2d 1118 (1989) (dismissal of case

is not appropriate sanction for violation of Md.Code (1988 Cum.Supp.), Health–Gen. Art., § 12–110(c)(2), regarding completion of a mental evaluation of a defendant who has entered a plea of not criminally responsible).

It will be observed that in each of the above cases the duty in question was to be performed by a court or some other tribunal. Under these circumstances and in the absence of an express sanction, we have consistently indicated that "any sanction should not impact on one of the parties." *Harford County v. Edgewater*, 316 Md. 389, 401, 558 A.2d 1219, 1225 (1989). That is largely because when a court or other tribunal is directed to perform some duty, the litigants ordinarily have no control over that action. *In re Dewayne H.*, 290 Md. at 407, 430 A.2d at 80. It would, therefore, be unfair to penalize one of the litigants for the tribunal's failure to perform the duty. *Brodak v. Brodak*, 294 Md. 10, 24–25, 447 A.2d 847, 854 (1982); *In re James S.*, 286 Md. at 707–708, 410 A.2d at 588–589.

In the case before us, however, it is otherwise. Here, the duty is imposed on the employer; the employer has control over the filing of a § 26(b) report once the employer learns that one of its employees has suffered a disability due to an occupational disease. Under similar circumstances, we have attached sanctions to the nonperformance of a duty, even when no express sanction is provided.

Thus, in *In re James S.*, when the State failed to submit a petition alleging the delinquency of the juvenile defendant within the period provided for by statute, we dismissed the petition, notwithstanding that no such penalty was in the provision. 286 Md. at 713, 410 A.2d at 591. Similarly, in *United States Coin & Currency v. Dir.*, 279 Md. 185, 367 A.2d 1243 (1977), the petition of the Director of Finance of Baltimore City to secure forfeiture of cash obtained in a gambling raid which resulted in a conviction was dismissed as untimely. 279 Md. at 188, 367 A.2d at 1244. A statute provided that the petition to obtain cash seized in connection with illegal gambling "shall" be filed within 90 days from the date of conviction. The petition was filed 119 days after

conviction. Noting that "shall" ordinarily is presumed mandatory, we dismissed the petition, concluding that the General Assembly intended that the procedure for obtaining seized contraband be strictly adhered to. *Id.* at 187–188, 367 A.2d at 1244–1245.

In *Bright v. Unsat. C. & J. Fund Bd.*, 275 Md. 165, 338 A.2d 248 (1975), we held that a claimant seeking damages from the predecessor to the Maryland Automobile Insurance Fund must comply with a provision requiring that notice "shall" be provided to the Fund of any action instituted to enforce a claim against the tortfeasor. 275 Md. at 169–170, 338 A.2d at 251. We held that failure to provide the notice resulted in the loss of the claimant's right to collect from the Fund—that the notice was a condition precedent to collection. *Id.* Other decisions reached by this Court are consistent with this approach. *See, e.g., In re Patrick A., supra* (dismissal of delinquency petition because State failed to wait until intake procedures were completed by Juvenile Services Administration); *State v. Hicks, supra* (failure to comply with speedy trial rule results in dismissal of case); *Johnson v. State, supra* (failure to comply with rule requiring that prisoner be brought before a judicial officer within a specified time results in dismissal).

What sanction, if any, is appropriate to apply to an employer who fails to perform the duty imposed by § 26(b)? To answer that question, we first must look to the purpose of the reporting requirement. What is now § 26(b) (originally codified as § 32F) was enacted by Ch. 465, Laws of 1939. Chapter 465 embodied the initial adoption of Maryland's workers' compensation law relating to occupational diseases. *See generally* Shriver, *The Maryland Occupational Disease Law*, 4 Md.L.Rev. 133 (1940). In 1939, what is now § 38(b), the accidental injury reporting provision, had been part of the law for 25 years. *See* Ch. 800, Laws of 1914 (originally codified as § 37). While we have no documented clue to the purpose of the occupational disease reporting requirement, it is not unreasonable to assume

that it was intended to serve the same purpose as the pre-existing accidental injury provision. *See Brooks v. State,* 314 Md. 585, 599–600, 552 A.2d 872, 879–880 (1989) (appropriate to consider relationship of statute to earlier legislation dealing with similar topic). We have identified the purpose of § 38(b). It "is to assure that the Commission receives information that the Legislature deems to be relevant and necessary." *Howard Co. Ass'n Retard. Cit. v. Walls,* 288 Md. at 531, 418 A.2d at 1214. I believe that the legislature had in mind a similar purpose with respect to occupational disease reporting.

Prompt notice of potential claims relating to occupational diseases will assist the Commission and apprise it of information which may be otherwise difficult to obtain if not quickly gathered. Further, as the Court of Special Appeals pointed out, "the Commission may observe the industrial conduct, [and] be alert to emerging patterns of diseases," *McDonald,* 77 Md.App. at 160, 549 A.2d at 769, and the Commission may take precautionary measures if it becomes aware of any potential health or safety threats not recognized by an employer. *See also* Art. 101, § 55 (regarding the Commission's right to inspect and investigate premises of employment and duty to bring to the attention of employers any law or rule relating to work safety). Thus, the importance of the notice provided to the Commission by an employer is substantial and should not be lightly disregarded.[2]

---

**2.** Montgomery County argues that by virtue of the adoption of the Maryland Occupational Safety and Health Law by Ch. 59, Laws of 1973, the need to report occupational diseases to the Commission no longer exists. That statute vests substantial authority regarding safety and health in the workplace in the Division of Labor and Industry and requires record-keeping and reporting by employers, both with respect to accidental injuries and occupational diseases. *See* Md.Code (1985 Repl.Vol.), Art. 89, § 33. The fact remains, however, that Ch. 59 contains no express repeal of either § 26(b) or § 38(b) of Article 101, nor has the General Assembly seen fit to repeal those provisions since it adopted the Occupational Safety and Health Law. Repeals by implication are not favored. *E.g., Farmers & Merchants Bank v. Schlossberg,* 306 Md. 48, 61, 507 A.2d 172, 178 (1986); *Management*

Until 1957 the occupational disease and accidental injury reporting requirements remained very similar, and to neither one was attached an express sanction for failure to report. Chapter 814, Laws of 1957, changed this situation by adding the tolling provision that now appears as § 38(c). No similar provision was added to what is now § 26.

This does not mean, however, that the General Assembly made a deliberate choice that there should be no sanction if an employer improperly failed to file an occupational disease report. The accidental injury tolling provision was part of a package of legislation recommended in the *Second Report of the Commission to Study Maryland's Workmen's Compensation Laws and the Operation of the State Industrial Accident Commission* (1957). The *Second Report* does not explain in detail why the Study Commission thought it desirable to add to the law what is now § 38(c), but it does suggest why no similar recommendation was made with respect to occupational diseases. The Commission advised that, although it had intended otherwise, "it has been found to be impossible to make an objective report as to all facets of the [Workers' Compensation] law." *Second Report* at 1. And it expressly listed "Occupational Diseases" among the areas reserved for future study. *Id.* at 28. Consistent with that approach, the *Second Report* dealt chiefly with the structure and organization of the Commission, procedural matters, and various issues pertaining to accidental injuries. The occupational disease portions of Article 101 were not addressed by the *Second Report.*

In 1980 the Governor's Study Commission on Workmen's Compensation Coverage filed its report. That Study Commission was created in 1978 "to consider the problem of industrial health and the adequacy of Workmen's Compensation coverage, and ... to report to the *Governor* ... with

---

*Personnel Serv. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310, 314 (1984). It appears to us that the legislature intended to retain the Article 101 reporting requirements in addition to those imposed by Article 89.

recommendations as to areas where legislation may be necessary." Joint Resolution No. 5, Laws of 1978 [emphasis in original]. The Study Commission agreed "that the occupational disease provisions in Maryland's workmen's compensation law need[ed] review and revision." *Report of the Governor's Study Commission on Workmen's Compensation Coverage* at 2 (1980). One of its recommendations was that a tolling provision, like that in § 38(c), be added to § 26 because "[l]imitations should not begin to run against a claimant ... who has given notice to his employer until the employer has submitted a report of the employee's ... disability due to an occupational disease to the Workmen's Compensation Commission." *Id.* at 16.

That and other Study Commission recommendations were embodied in Senate Bill 973 of 1980, a departmental bill sponsored by Senator McGuirk. Also introduced at the 1980 session was SB 396, sponsored by Senator Stone. Both bills dealt extensively with the occupational disease area of the law. Senate Bill 396, heavily amended, was enacted as Ch. 706, Laws of 1980. It did not contain (and in no form ever contained) a tolling provision for § 26. Senate Bill 973 was not enacted.

The available legislative history does not explain why SB 396 and not SB 973 was chosen as the vehicle for making changes in the occupational disease law. Nor does it contain any express statement as to why the § 26 tolling provision was not adopted.[3] It may be that the General

---

**3.** Montgomery County suggests that this may have been the result of testimony before the legislative committees indicating that occupational diseases may be difficult to detect, and their effects may not manifest themselves until long after exposure to whatever condition produces the disease. *See Miller v. Western Electric Co.,* 310 Md. 173, 185, 528 A.2d 486, 492 (1987). It is argued that under these circumstances, it would be unreasonable to toll limitations until an employer filed a report. The argument is not persuasive. Section 26(b) does not require an employer to report until a disability has occurred to an employee, and until the employer has obtained "knowledge or notice thereof...." The occupational disease reporting requirement demands no more than the accidental injury reporting requirement:

Assembly thought that the § 38(c) tolling applied to § 26 because of the similar purpose embodied within the two reporting provisions; that a judicially prescribed sanction would be applied under § 26; or that § 38(c)'s specific wording that "the limitations prescribed *by this article* shall not begin to run ... until such report shall have been furnished" made § 38(c) applicable to § 26 [emphasis supplied]. Under any of these assumptions, the legislature might have thought the addition of an express tolling provision to § 26 to be unnecessary.

It may also be, of course, that the 1980 General Assembly did not add the tolling provision to § 26 because the legislative body did not wish to impose any sanction for failure to file an occupational disease report. The failure of an amendment or a bill is "not an infallible indication of legislative intent," but may be taken into account. *NCR Corp. v. Comptroller,* 313 Md. 118, 125, 544 A.2d 764, 767 (1988); *Bd. of Examiners in Optometry v. Spitz,* 300 Md. 466, 478–480, 479 A.2d 363, 369–370 (1984); *Cohen v. Goldstein,* 58 Md.App. 699, 716–717, 474 A.2d 229, 237–238, *cert. denied,* 301 Md. 41, 481 A.2d 801 (1984).

In any event, the majority concedes that the "legislative history does not explicate why there is a tolling provision in accidental injury cases and none in occupational disease cases...." At 475, 564 A.2d at 802. It recognizes that rejection of "the departmental bill, containing a tolling provision, ... is not of particular significance...." *Id.* at 477, 564 A.2d at 803. Nor is it apparent that "the Legislature deliberately chose to extend the time for notice to an employer from thirty days to one year in lieu of a tolling provision[ ]" when it adopted SB 396 in 1980. *Id.* at 478, 564 A.2d at 803.

The majority attempts to bolster its reasoning by arguing that occupational disease is different from accidental injury because of the long period of time that may be involved in

---

when an employer knows of disability caused by disease or injury, the employer must report it.

the manifestation of a disease. *See, e.g.,* at 472–475, 564 A.2d at 801. Obviously, this is often true. But it is not always so, as this very case illustrates; the parties have stipulated "that as early as October, 1977, both claimant and Montgomery County . . . had actual notice for Section 38(c) purposes that claimant's heart attack was attributable to stress caused by his employment with Montgomery County. . . ." In any event, however, the possibility of delay in recognizing the onset of an occupational disease would seem to make little difference with respect to the enforcement of a reporting requirement that demands no action by the employer until the employer is aware of disability caused by the disease. *See* note 3, *supra.*

The majority also asserts that its holding is supported by "the clear majority rule under which courts decline judicially to toll limitations based on an employer's failure to report a work-related injury or occupational disease." At 471, 564 A.2d at 800. I find that statement, as applied to this case, hyperbolic at the very least.

In Part I.D of its opinion, the majority discusses a number of cases that are supposed to support its notion of a vast national consensus in favor of the majority position. Only two of those many cases, however, involve statutory patterns like Maryland's: that is, a situation in which there is an express tolling provision for failure to file an accidental injury report, but none for failure to file an occupational disease report. Almost all of the cases involve statutes with reporting requirements but no tolling provisions whatsoever.

The two cases that, I concede, give some backing to the majority position are *Bainbridge v. Boise Cascade Plywood Mill,* 111 Idaho 79, 721 P.2d 179 (1986), and *Herod v. Mutual Chem. Co. of America,* 115 N.J.L. 369, 180 A. 432 (1935). In the three-two decision in *Bainbridge,* the majority relied in part on the Idaho provision making only willful failure to file notice a tolling event; it found no willfulness. 111 Idaho at 82–83, 721 P.2d at 182–183.

Moreover, in neither *Bainbridge* nor *Herod* is there any discussion of the doctrine of implied sanctions for mandatory statutory language. As I have shown, this doctrine is alive and well in Maryland, and should be applied in this case to toll limitations as both Judge Raker and the Court of Special Appeals held.

In short, I am convinced that the employer reporting provisions of §§ 26(b) and 38(b) should be treated identically so far as sanctions are concerned. To do so advances their identical goals; to treat the two provisions differently produces a harsh and unfair result inconsistent with the objectives of the worker compensation law. I would affirm.

Judge ELDRIDGE has authorized me to say that he joins in this dissenting opinion.